**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Xiomaro E. HERNANDEZ,
Defendant–Appellant.**

No. 91–5817.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1992.

Decided Sept. 16, 1992.

---

Shawn Franklin Moore, Roberts & Moore, Washington, D.C., argued, for defendant-appellant.

John Granville Douglass, Asst. U.S. Atty., Richmond, Va., argued (Richard Cullen, U.S. Atty., Jay Apperson, Asst. U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

BUTZNER, Senior Circuit Judge:

Xiomaro E. Hernandez appeals a judgment entered on the verdict of a jury convicting her of conspiracy to distribute and to possess with intent to distribute cocaine. She alleges that the district court abused its discretion by admitting extraneous evidence of bad acts or crimes under Federal Rule of Evidence 404(b). We hold that the district court erred in admitting the challenged evidence over her lawyer's objection. Because we cannot conclude that the error was harmless, we vacate the judgment and remand the case for a new trial.

### I

Xiomaro Hernandez, a native of the Dominican Republic, came to the United States in 1976 and is now a naturalized citizen. She lived at first in Puerto Rico and Miami, then moved to New York City where she worked in a travel agency owned by her family. She then moved with Rodolfo Fernandez to the District of Columbia where they shared an apartment. She testified that she supported herself during this time by traveling to New York, buying clothes, and bringing them back to Washington for resale.

The charges against Hernandez arose out of an undercover operation run by a joint task force set up by the Drug Enforcement Agency (DEA) and local police in northern Virginia. A DEA Special Agent, Frank Shroyer, obtained an introduction to

a suspected drug dealer named Naíkin De-LaCruz Duran (DeLaCruz). On August 23, 1990, Shroyer arranged to purchase powder cocaine and a sample of cocaine base, or crack cocaine, from DeLaCruz. One week later, Shroyer solicited DeLaCruz to sell him crack. After this conversation, task force officers observed DeLaCruz entering the apartment building where Hernandez lived with Fernandez. After DeLaCruz left the building, he met Shroyer at a metro station and gave him the promised crack. On September 10, 1990, Shroyer sought to purchase a substantial amount of crack from DeLaCruz. DeLaCruz stated that he would go to the District, get the drug, and return to Virginia to sell it to Shroyer. A surveillance team saw DeLaCruz enter the same building, then exit in the company of Fernandez. DeLaCruz delivered the drug to Shroyer in the parking lot outside DeLaCruz's apartment building. Federal agents and police immediately arrested DeLaCruz and then entered his apartment, where they found and arrested Fernandez.

DeLaCruz negotiated a plea agreement requiring him to cooperate with the government in its prosecution of Fernandez, Hernandez, and a third person, Victor "Shorty" Liriano. A grand jury indicted both Hernandez and Liriano on one count of conspiracy to distribute and to possess with intent to distribute cocaine. It indicted Fernandez for conspiracy to distribute and to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and interstate travel to promote an illegal activity.

During the trial of the three defendants, the government presented evidence linking Hernandez with the transactions at issue. Agent Shroyer testified that DeLaCruz identified his cocaine source as "she," although the defense attempted to impeach his testimony by citing grand jury testimony in which he referred to the source as "he." Shroyer testified that he had dealt only with DeLaCruz and that, upon his arrest, DeLaCruz identified the crack as belonging to Fernandez. A police officer who conducted surveillance of DeLaCruz during the operation testified that he never saw him in the company of any woman.

DeLaCruz testified that on August 23 and August 30 he went to the apartment shared by Hernandez and Fernandez. He said that on both occasions he dealt only with Liriano, who took his money and left the apartment to get drugs from another apartment. On the first occasion, he said, Liriano also obtained a sample of crack from the hall closet of the Hernandez-Fernandez apartment. DeLaCruz testified that on September 10 he discussed the larger purchase of crack directly with Hernandez and Fernandez. He testified that Hernandez told him on the telephone that she could only supply nine ounces of crack.

When DeLaCruz arrived at the apartment, Hernandez and Fernandez were present. He testified that Hernandez got the drugs from the table beside her bed and handed them to Fernandez, who verified the amount and then carried them to DeLaCruz's apartment. DeLaCruz said that had he not been arrested he would have given the money produced by the sale to Hernandez and Fernandez.

DeLaCruz's wife, Costanza DeLaCruz Sierra, testified that Hernandez, Liriano, and Jose Hotke visited her after her husband's arrest. During that visit, she said, Hernandez offered to pay DeLaCruz's legal bills if he testified that the drugs were his and his alone. The district court admitted this testimony under Federal Rule of Evidence 801(c)(2)(E) as a statement by a coconspirator during the course of and in furtherance of the conspiracy. Its admissibility is not before us on appeal.

Romulo DeLeon, who was testifying pursuant to a plea agreement in an unrelated drug case, related that he had met Hernandez at the clothing store where he worked. The meeting occurred more than six months before the acts alleged in the indictment. He testified that Hernandez had told him that she knew a special recipe for cooking crack "to make more quantity while you are cooking it." He said she had told him that she knew the recipe because "she used to do that, sell that in New York."

The government offered DeLeon's testimony as part of the government's case in chief, not in rebuttal to Hernandez's defense. Counsel for Hernandez objected to the testimony. The district court admitted it under Rule 404(b) and instructed the jury that they were not to "consider[ ] that these defendants are guilty of the crimes for which they are on trial here today merely because they are bad people, or that they have a propensity for crime." The court cautioned the jury that they were to consider the evidence only if they found that Hernandez had committed the acts charged in the indictment and, if so, to consider it only as evidence of the intent with which she did those acts.

Hernandez testified that she was out of town during the first two drug transactions and that she had left Hotke, an acquaintance whom she had met in Puerto Rico, in charge of her apartment during her absence. She stated that she had never had more than minimal contact with DeLaCruz and that she had "[n]ever in my life" sold him crack or drugs. She did not testify that she had no knowledge of crack or that she had never been exposed to or involved with drugs in general but only that, on the occasions alleged in the indictment, she was not involved in or aware of the drug transactions at issue.

During the trial, the government moved to dismiss the interstate travel indictment against Fernandez. The jury convicted Hernandez of conspiracy and Fernandez of conspiracy and of a substantive count charging possession with intent to distribute. The jury, however, acquitted Liriano of conspiracy.

## II

At the time of trial, Rule 404(b) provided:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b) (effective until December 1, 1991). "This court has held that Rule 404(b) is an inclusive rule that allows admission of evidence of other acts relevant to an issue at trial except that which proves only criminal disposition." *United States v. Watford*, 894 F.2d 665, 571 (4th Cir.1990). The decision to admit evidence of other acts under Rule 404(b) is within the discretion of the trial court. *United States v. Mark*, 943 F.2d 444, 447 (4th Cir.1991).

Some trouble and confusion in applying this rule are only to be expected, for it is designed to exclude evidence that many both within and without the legal system intuitively find powerful and useful. The Supreme Court has noted:

The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948) (footnotes omitted).

In *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988), the Court expressed its concern about the possibility of undue prejudice that might result from the introduction of evidence under Rule 404(b) and stipulated the measures a district court must take to protect against prejudice:

We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b). We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—

as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. (citations omitted).

█ In this circuit, we have evolved a test for evidence proffered pursuant to Rule 404(b). "Under Rule 404(b) ... prior bad acts are admissible if they are (1) relevant to an issue other than character; (2) necessary, and (3) reliable." *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir.1988) (footnotes omitted). *Accord United States v. King*, 768 F.2d 586, 587 (4th Cir.1985); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir.1982). Evidence that passes this test is not automatically admissible, however. Rule 403 requires the trial judge to determine that its probative value outweighs the danger of undue prejudice to the defendant. *Rawle*, 845 F.2d at 1247; *King*, 768 F.2d at 588; *Hadaway*, 681 F.2d at 217. In this circuit, unlike others, the trial court is not required to make an explicit statement of the purpose for which the evidence is admitted. *Rawle*, 845 F.2d at 1247. The use of limiting instructions setting out the purpose for which the evidence is admitted and admonishing the jury against considering it as improper evidence of guilt will do much to alleviate difficulties raised by its admission. *See, e.g., United States v. Masters*, 622 F.2d 83, 87 (4th Cir.1980). The district court offered an exemplary limiting instruction.

### III

█ Under the doctrine of *Rawle*, we must begin by considering what, if any, relevance the challenged testimony bears to the issue for which it was offered. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. "In order for evidence to be relevant, it must be sufficiently related to the charged offense." *Rawle*, 845 F.2d at 1247 n. 3.

Judged by this standard, the relevance of DeLeon's testimony was at best small. It was offered as evidence of the intent with which Hernandez engaged in the charged conspiracy. The testimony did not establish anything about her conduct or mental state during the course of the conspiracy alleged in the indictment. Hernandez offered as her defense the contention that she had not sold the crack in question to DeLaCruz. She did not testify that she had in some way sold or handled the crack but without the requisite knowledge or intent; nor did she testify that she had never touched crack or did not know what it was. The DeLeon testimony showed that, before her move from New York to Washington, Hernandez had learned a special recipe for making crack and that she had made and apparently sold it in New York at that time. The testimony did not show that she intended to engage in crack distribution in Washington or that she had continued to deal in crack after leaving New York. Nor did it show that she intended to engage in crack distribution with Fernandez, or even that she intended to engage in future crack dealing at all.

█ It is a truism that a plea of "not guilty" to a charge requiring intent places that mental state in issue and that the state may offer evidence of other bad acts to address that issue. *Mark*, 943 F.2d at 448; *United States v. DiZenzo*, 500 F.2d 263, 265 (4th Cir.1974). This principle, however, does not permit any sort of uncharged bad act to be brought to bear against defendants charged with intentional crimes. Most crimes involve some level of intent, but all evidence of other intentional acts or crimes does not for this reason become relevant. Evidence to show intent is not admissible when the unrelated bad act is "tenuous and remote in time from the charges in the indictment." *United States v. Cole*, 491 F.2d 1276, 1279 (4th Cir.1974).

For example, evidence of a prior stabbing by the defendant is not relevant to show intent in a later encounter with a different victim when the defendant admitted stabbing the victim but pleaded self-defense. *United States v. Sanders*, 964 F.2d 295, 298–99 (4th Cir.1992).

A plausible interpretation of the rule holds that evidence of other crimes may not be offered when the defendant unequivocally denies committing the acts charged in the indictment. *See United States v. Ortiz*, 857 F.2d 900, 904 (2d Cir.1988). This circuit has no similar precept. Our cases examine the use for which intent evidence is offered in each instance, following the admonition that "the rule and the exceptions should be considered with meticulous regard to the facts of each case." *United States v. Baldivid*, 465 F.2d 1277, 1290 (4th Cir.1972) (Sobeloff, J., concurring in part and dissenting in part). We have admitted evidence of other acts on the issue of intent, for example, where the defendant claimed that "he was present but innocent" during the sale of the drugs, and he elicited false testimony that he had no prior involvement in any cocaine transaction, *United States v. Rhodes*, 779 F.2d 1019, 1030–31 (4th Cir.1985); where the defendant contended he had merely obtained a truck for friends without knowing it would be used to transport stolen property, *Hadaway*, 681 F.2d at 217; where intent was a "key issue" because the defendant was "sharply contesting the sufficiency of the government's proof of lascivious intent" in a child-molestation case, *United States v. Beahm*, 664 F.2d 414, 417 (4th Cir.1981); and where the defendant has sought "to depict herself as one whose essential philosophy and habitual conduct in life is completely at odds with the possession of a state of mind requisite to guilt of the offense charged...." *United States v. Johnson*, 634 F.2d 735, 737 (4th Cir.1980).

 The government insists that because intent and knowledge are essential elements of the charge against Hernandez, which were placed in issue by her plea of not guilty, the DeLeon testimony about prior bad acts is admissible. For this prop-

osition it relies on *Mark*, 943 F.2d at 448. But reliance on *Mark* for this sweeping ground for admission is unwarranted. The evidence must still be relevant. In *Mark* the trial court pointed out that the evidence of prior bad acts disclosed how the defendant got the drugs that he was charged with selling. 943 F.2d at 448. Consequently, *Mark* is well within the mainstream of our cases that have admitted evidence of prior similar acts to show intent and knowledge. Because *Mark* differs significantly from the case before us, it does not support the government's contention that DeLeon's evidence was relevant.

Necessity is the second part of the *Rawle* test. In some sense all evidence that tends to make conviction more likely is necessary, particularly in a case like this one where the other evidence of guilt is tenuous. Our cases dictate a more sophisticated inquiry: "The evidence is necessary and admissible where it is an essential part of the crimes on trial [citation omitted] or where it 'furnishes part of the context of the crime.'" *Rawle*, 845 F.2d at 1247 n. 4, quoting *United States v. Smith*, 446 F.2d 200, 204 (4th Cir.1971); *accord Mark*, 943 F.2d at 447. DeLeon's testimony serves no such purpose. It bears at best a slight relationship to the acts charged in the indictment. Indeed, its principal value relates not to the crime but to the alleged criminal. The charged acts become more plausible when the defendant has admitted involvement with crack on other occasions. But this, once again, is precisely the criminal propensity inference Rule 404(b) is designed to forbid.

As for the third part of the test, reliability, *see Rawle*, 845 F.2d at 1247, this evidence barely passes muster. Admissible prior acts testimony is sometimes corroborated by a judgment of conviction, *King*, 768 F.2d at 587; by other testimony as to the time and place at which the prior acts allegedly occurred, *Mark*, 943 F.2d at 449; *Hadaway*, 681 F.2d at 218; or by audio- or videotaped evidence, *DiZenzo*, 500 F.2d at 266. Such corroboration, however, is not required; the weight and credibility of uncorroborated testimony of defendants testi-

fying pursuant to plea agreements is largely for the jury. However, "the convincingness of the evidence that other crimes were committed is a factor that should be weighed in the decision to admit such evidence." *Cole*, 491 F.2d at 1279. In this case, careful consideration of reliability might not in itself require barring the testimony, but it surely does not generate a compelling argument for its admission.

## IV

■ Even assuming the DeLeon testimony did not fail the *Rawle* test, it still was inadmissible unless it could be held more probative than prejudicial. *Rawle*, 845 F.2d at 1247. Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"The prejudice which the rule is designed to prevent is jury emotionalism or irrationality." *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir.1986). A court should exclude evidence when "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Masters*, 622 F.2d at 87 (quoting Trautman, *Logical or Legal Relevancy—A Conflict in Theory*, 5 Vand.L.Rev. 385, 410 (1951–52)). In this case, the trial record does not reflect that the district court engaged in an explicit balancing of the probative value of the evidence against prejudice. However, "[a]s long as the record as a whole indicates appropriate judicial weighing, we will not reverse for a failure to recite mechanically the appropriate balancing test." *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir.1986).

In *Lewis* the record disclosed that the attorneys presented lengthy arguments on the balancing test and that the probative value of the evidence was high. Based on these factors the court was able to con-

clude on appeal that the trial court had complied with the admonition to balance the probative value of prior extraneous culpability with its prejudicial effect. But in Hernandez's case the record is silent about the balancing test, and there is no mention of Rule 403. Perhaps balancing was accomplished at an unreported bench conference. Here—unlike *Lewis*—the probative value of the evidence is slight. Hernandez's "cooking" recipe and her sale of crack in New York at some indefinite time are in no way connected to the cocaine she is charged with conspiring to sell in this case. The evident effect, if not the purpose, of DeLeon's testimony relating Hernandez's statement about her activities in New York was to bolster DeLaCruz's testimony about her acts in Washington by depicting her as an experienced crack dealer. But this is precisely the effect Rules 403 and 404(b) seek to avoid. Upon consideration of all the circumstances, we think the balance so one-sided that admission of the evidence was error.

## V

■ Having concluded that the admission of DeLeon's testimony was error, we must decide whether the error requires reversal or whether it was harmless. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). In the 404(b) context, the test for harmlessness is "whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial. In considering the harmlessness of the error, it is proper to consider other evidence of the defendant's guilt." *United States v. Davis*, 657 F.2d 637, 640 (4th Cir.1981) (citations omitted).

Such an inquiry in this case precludes a finding of harmlessness. The evidence against Hernandez was sparse. No one testified that she had been present at the first two sales. The government's own witnesses said that, though the sales took place in the apartment she shared with Fernandez, the actual vendor was Liriano, who went to another apartment in the same

building to obtain the drugs. DeLaCruz testified that on one of those two occasions Liriano produced a sample of crack from the hall closet of the Hernandez/Fernandez apartment; but no testimony, credible or otherwise, linked this sample with Hernandez. The DEA agents and police officers never testified that their surveillance, which spotted Fernandez, revealed any movements by Hernandez suggesting that she was involved in any of the three transactions. The sole evidence linking Hernandez to the conspiracy came from DeLaCruz and his wife. They were directly interested in obtaining a reduced sentence for De-LaCruz in exchange for his substantial assistance in this case. Moreover, DeLeon, the sole source of the prior extraneous evidence against Hernandez, was testifying pursuant to a plea agreement that offered him hope that his testimony would result in a reduction of his sentence below the mandatory minimum of 10 years.

The acquittal of Liriano indicates that DeLeon's testimony against Hernandez may have affected the verdict. Although testimony implicated Liriano in the conspiracy, DeLeon did not testify against him about any prior bad acts. In contrast, Hernandez, who was the subject of DeLeon's extraneous bad act testimony, was convicted. Under these circumstances, we cannot say that the error in admitting DeLeon's testimony was harmless.

The judgment is vacated, and the case is remanded for retrial consistent with this opinion.

VACATED AND REMANDED.