25 F.3d 1042
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Eugene MOORE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Lee GREGORY, a/k/a Murdock, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Philip A. MCLAMB, Defendant-Appellant.
 Nos. 93-5273, 93-5274, 93-5281.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 13, 1994.
Decided: June 10, 1994.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CR-91-440-2)
 ARGUED: James Hanjo Lengel, Columbia, SC, for appellants Moore and McLamb;
 Michael P. O'Connell, Asst. Fed. Public Defender, Charleston, SC, for appellant Gregory.
 David S. Kris, U.S. Dept. of Justice, Washington, DC, for appellee.
 ON BRIEF: J. Preston Strom, Jr., U.S. Atty., Alfred W. Bethea, Asst. U.S. Atty., U.S. Dept. of Justice, Washington, DC, for appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and LUTTIG, Circuit Judges, and TURK, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants raise several challenges to their convictions and sentences stemming from involvement in the arson of a private home in Myrtle Beach, South Carolina. We find that the challenges lack merit and therefore affirm the convictions and sentences.
 
 I.
 
 2
 Appellants in this case--Larry Eugene Moore, Steven Lee Gregory and Philip A. McLamb--were convicted by a jury of one count of conspiracy in violation of 18 U.S.C. Sec. 371; five counts of mail fraud and aiding and abetting that crime, in violation of 18 U.S.C. Sec. 1341; two counts of violating the federal arson statute, and aiding and abetting that crime, in violation of 18 U.S.C.Sec. 844(i); and two counts of using fire to commit a felony, and aiding and abetting that crime, in violation of 18 U.S.C. Sec. 844(h)(1). Moore and McLamb were each convicted of one additional count of violating the federal arson statute, and aiding and abetting that crime, in violation of 18 U.S.C. Sec. 844(i), and one additional count of using fire to commit a felony, and aiding and abetting that crime, in violation of 18 U.S.C. Sec. 844(h)(1).
 
 
 3
 All of the convictions stem from the attempted and ultimately successful burning for hire of a residence in Myrtle Beach, South Carolina, so that the owner could receive insurance proceeds therefrom. The owner, Daniel A. Vogel, was convicted in separate proceedings. At trial, the government presented evidence that appellants tried several means to burn the house, including plastic explosives, a flare gun and large amounts of gasoline.
 
 
 4
 Appellants now raise a number of challenges to their convictions and the resulting sentences. Because the contentions involve different facts, the facts relevant to each individual challenge are best related in the discussion of that particular challenge.
 
 II.
 
 5
 Gregory individually raises four trial evidentiary issues and two sentencing issues. We review a district court's evidentiary decisions for an abuse of discretion. United States v. Hassan El, 5 F.3d 726, 731 (4th Cir.1993). Review of the court's determinations under the Sentencing Guidelines is governed by 18 U.S.C. Sec. 3742(e). If the issue turns primarily on a factual determination, as do both of the issues now before us, an appellate court should apply the "clearly erroneous" standard. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-76 (1985).
 
 A.
 
 6
 Gregory asserts that the district judge abused his discretion by allowing ATF agents to testify to prior consistent statements by Terry Norman. Prior consistent statements of a witness are not hearsay if "offered to rebut an express or implied charge of recent fabrication or improper influence or motive." Norman's credibility had been attacked prior to the presentation of the agent's testimony. Gregory argues, however, that the prior consistent statement must be made prior to when the alleged motive for fabrication arose. See United States v. Weil, 561 F.2d 1109, 1110-11 (4th Cir.1977). In this instance, the prior statement was made to law enforcement officers after Norman had concluded an arrangement with the government. It is apparent that the statement was not offered for the truth of the matter asserted, but to rehabilitate Norman's credibility after it had been impeached. See United States v. Parodi, 703 F.2d 768, 784-87 (4th Cir.1983). Therefore, we find no abuse of the district judge's discretion in admitting Norman's prior consistent statement.
 
 
 7
 Gregory next claims that the district court abused its discretion by allowing Norman to testify that Gregory was involved in another arson with him that occurred subsequent to the Myrtle Beach burning, and then allowing an arson investigator to discuss the cause of the second fire. The district court admitted the evidence pursuant to Fed.R.Evid. 404(b) as relevant to the issue of intent and as evidence of a common scheme or plan. Recognizing that the defendant's plea of not guilty places his state of mind in issue, United States v. McLamb, 985 F.2d 1284, 1289 (4th Cir.1993), Rule 404(b) evidence offered to prove mental state must be relevant, that is, sufficiently related to the charged offense. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir.1992). As the evidence went to another, similar arson, there is little doubt that it is relevant and necessary to the government's efforts to demonstrate that the defendant had the necessary intent to commit the present offense. Id. This evidence is particularly relevant to showing intent in the conspiracy charge since defendant asserted that he never agreed to commit arson.* Finally, appellant refused to request a limiting instruction despite repeated invitations to do so. The district judge did not abuse his discretion in admitting this evidence.
 
 
 8
 Gregory objects to the district court's limitation of his cross examination of Tilley about whether Norman had called him from jail and told him to implicate Gregory in the arson. We see no abuse of discretion in limiting appellant's counsel to asking Tilley whether Norman had contacted him from the jail. Relying on United States v. Katsougrakis, 715 F.2d 769, 778-79 (2d Cir.1983), cert. denied, 464 U.S. 1040 (1984), the judge found that appellant's counsel had no good faith basis in further exploring his theory, and therefore limited questioning after Tilley's denial that he had spoken to Norman from jail. It is well established that the extent and scope of cross examination are within the sound discretion of the trial judge. Alford v. United States, 282 U.S. 687, 694 (1931). We find no abuse of the district judge's discretion in limiting cross examination.
 
 
 9
 In response to a question about whether he had interviewed any of the individuals that Norman had told him were involved in the arson, an ATF agent testified, "Yes. I contacted Ted Warren and questioned him concerning what prospective defendants might want to talk to us." Gregory contends that this statement indirectly comments on his silence both before and during trial and places his character in evidence. We find this argument without merit. The test for determining whether an indirect remark constitutes improper comment on a defendant's failure to testify is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. United States v. Whitehead, 618 F.2d 523, 527 (4th Cir.1980). We do not believe that there is even a remote likelihood that the jury interpreted this remark as a statement on appellant's failure to testify. Nor do we agree that the statement was intended to show Gregory's guilt by damaging his character in violation of Fed.R.Evid. 404(a). Appellant's conclusions are simply too tenuous.
 
 B.
 
 10
 Gregory next raises two sentencing issues. He first attacks the district court's decision not to group the two separate arsons of Vogel's house. Sentencing Guidelines Sec. 3D1.2 provides that separate counts "involving substantially the same harm" shall be grouped together for purposes of sentencing. Under Section 3D1.2(b), separate transactions connected by a common criminal objective or constituting part of a common scheme or plan" involve substantially the same harm. Gregory argues that there was only one victim within the meaning of Sec. 3D1.2, Aetna Surety and Casualty Co. Further, Gregory argues that the two arsons constituted one common scheme or plan: to defraud Aetna by destroying the residence. The sentencing judge disagreed, reasoning that the two arsons created separate risks of harm: "I think there are two separate break-ins; there's two separate risks of harm involved in breaking in this house and attempting to burn it down." The district court obviously assessed the individual risks which were associated with the separate break-ins.
 
 
 11
 Whether separate counts should be grouped together under Sec. 3D1.2(b) is a heavily fact-specific determination. For example, two counts of rape of the same victim on different occasions are not grouped together. U.S.S.G. Sec. 3D1.2, Application Note 4, example 4. In contrast, one count of auto theft and one count of altering the stolen car's vehicle identification number are grouped. Id., example 3. In this case, the circumstances are similar to the guideline example of multiple rapes of the same victim. There were multiple, separate risks of harm involved in the two arsons, not one composite harm. Accordingly, the district court's refusal to group these counts was not clearly erroneous.
 
 
 12
 Finally, Gregory contends that the district judge improperly increased his guideline offense level. U.S.S.G.Sec. 2K1.4(b)(1) permits the court to increase the guideline level if the defendant knowingly created a substantial risk of death or serious bodily harm. The district judge found that the burning of Vogel's home created such a risk to neighbors and firefighters. It is the creation of risk, not the actual consequences of the defendant's action, that triggers the enhancement under Sec. 2K1.4(b)(1). Vogel's neighbors and the firefighters who responded to the fire were all placed in substantial personal risk because of the rapid burning of the gasoline soaked home. One neighbor testified that his house was not damaged out of mere fortuity:
 
 
 13
 The wind was blowing out toward the ocean somewhat south, which was right away from our house. And the normal breeze of course is from the ocean to the shore. And if it had been that, I'm afraid my house would have gone up, too. The district court's finding that Gregory created a substantial risk of death or serious bodily harm was thus not clearly erroneous.
 
 III.
 
 14
 Moore, McLamb and Gregory jointly raise two legal issues which we review de novo. First, defendants assert that the government failed to prove that the Vogel residence was used in an activity that affects interstate commerce as required in 18 U.S.C. Sec. 844(i). The following facts were stipulated to at trial: the house was connected to interstate gas and telephone lines, Vogel had utilized materials that had moved in interstate commerce to renovate the house, an out of state bank held a mortgage on the house, the house was then being marketed for sale in several states, the house was an asset being held under the authority of the United States Bankruptcy Court in North Carolina, and at the time of the fire, the house was insured by an out of state insurance company. In United States v. Ramey, --- F.3d ----, ---- (4th Cir. May 17, 1994) (No. 93-5178, Slip Opinion at 6-7), we held that connection of a house to an interstate power grid constitutes a sufficient use in an activity that affects commerce to satisfy the arson statute. The government has therefore shown that the Vogel residence was used in an activity that affects interstate commerce.
 
 
 15
 Appellants next challenge the sufficiency of the evidence to sustain their convictions on the mail fraud counts. We cannot disturb the verdicts if, considering the evidence in a light most favorable to the government, we conclude that any rational trier of fact could have found that the elements of the crime had been proved beyond a reasonable doubt. United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991). Appellants ignore the fundamental tenet of conspiracy law that a defendant is liable for the substantive crimes of his co-conspirators when those crimes are reasonably foreseeable and in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647 (1946). The mail fraud clearly was both foreseeable and in furtherance of the conspiracy because the impetus of the conspiracy from the beginning was to defraud the insurance company. Thus, as co-conspirators, all of the defendants were liable for mail fraud even though they did not individually submit claims to Vogel's insurance company. See United States v. Cummings, 937 F.2d 941, 944-45 (4th Cir.), cert. denied, 112 S.Ct 395 (1991).
 
 IV.
 
 16
 Finally, McLamb claims that he withdrew from the conspiracy. He asserts that he was dismissed from the conspiracy by the affirmative act of others. However, a defendant has the burden of demonstrating withdrawal from a conspiracy by proving an affirmative act communicating the withdrawal to his co-conspirators. United States v. United States Gypsum Co., 438 U.S. 422, 464 (1978). There was sufficient evidence that he remained a member of the conspiracy throughout and was entitled to a share of the insurance proceeds. Thus he did not demonstrate withdrawal and remained liable for the overt acts of his co-conspirators. See Pinkerton, 328 U.S. at 647.
 
 V.
 
 17
 Finding no merit in any of appellants' assignments of error relating to their convictions or sentences, the judgment of the district court is hereby affirmed.
 
 AFFIRMED
 
 
 *
 Appellant's claims that the government failed to provide notice must fail as the government did not intend to use this evidence; the issue was raised for the first time by a co-defendant during cross examination of Norman