27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alveda INGRAM, a/k/a Alveda Ingram Richardson, Defendant-Appellant.
 No. 93-5607.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 15, 1994.
Decided: June 24, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior Judge, sitting by designation. (CR-92-207-L)
 Fred Warren Bennett, Associate Professor of Law, Catholic University Law School, Washington, D.C., for Appellant.
 Andrea L. Smith, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Lynne A. Battaglia, United States Attorney, Stephen S. Zimmermann, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER, HALL, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Alveda Ingram appeals her conviction on a single count of conspiracy to possess and to distribute cocaine and heroin. We find no reversible error, and we affirm.
 
 
 2
 * The evidence at trial consisted primarily of wiretapped conversations that included, according to a government drug expert, talk of drug deals. According to the expert, DEA Special Agent Kula, Ingram negotiated prices and checked on distributors. For instance, on November 20, 1991, someone telephoned Ingram and said that "Bobby" had come over and got "three and a half ... for twentyseven." Agent Kula interpreted this to refer to the price of heroin. Another one of Ingram's callers, "Anthony," called on January 8, 1992, to say that he had spoken with some people and that one had said "eighteen ... one of them said seventeen-fifty ... seventeen-five rather." Kula testified that this referred to the price of a kilogram of cocaine.
 
 II
 
 3
 The indictment alleged that Ingram was involved in a drug conspiracy that lasted from about January, 1991, through March, 1992. A government witness, Jude Mbionwu, who is serving a fifteen-year sentence for drug-related crimes, testified that he had supplied Ingram with large quantities of heroin beginning in late 1988 and continuing until the time he left the Baltimore area about a year later. He identified the voice on one of the taped telephone conversations as that of Kenneth Ezeoke. Mbionwu, who had introduced Ingram to Ezeoke, knew firsthand that Ingram was part of a distribution network in 1988-89 that involved heroin from Nigeria and that Ezeoke had sup plied Ingram with heroin. In accordance with Fed.R.Crim.P. 404(b), the government had informed Ingram before trial of its intent to use such "other bad acts" evidence. Defense counsel said that he would object as he saw fit during the testimony, but no objections were made.
 
 
 4
 We review the issue for plain error. Fed.R.Crim.P. 54(b). To merit reversal, we must find error that is plain and which affected the outcome of the case or affected substantial rights; even if plain error is found, we will only exercise our discretion to correct the error "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 113 S.Ct. 1770, 1779 (1993). The plain error exception to the contemporaneous objection rule should be used sparingly. United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir.1993). Our first task, then, is to determine whether this evidence was erroneously admitted.
 
 
 5
 Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Although much of Mbionwu's testimony involved drug dealing that was unconnected to the charged conspiracy, the government argues that it was introduced to show knowledge and intent of Ingram. Ingram argues that such evidence is not admissible to show knowledge and intent when the defendant denies any wrongdoing, and she cites cases from other circuits for the proposition that the evidence is not admissible when the defendant does not raise the defense of lack of knowledge or intent. Our rule, however, is more flexible than that in the cited cases.
 
 
 6
 In United States v. Jenkins, 7 F.3d 803, 806 (8th Cir.1993), the court held that "there is no issue of intent where the defendant claims he did not do the charged act at all, rather than simply asserting he did it either innocently or mistakenly." On the other hand, the Seventh Circuit holds that a blanket denial of wrongdoing negates intent and the government on rebuttal may introduce other crimes evidence to show intent. United States v. Mazzanti, 888 F.2d 1165, 1171 (7th Cir.1989), cert. denied, 495 U.S. 930 (1990).
 
 
 7
 We take a more flexible approach. In United States v. Hernandez, 975 F.2d 1035, 1040 (4th Cir.1992), we held that other crimes evi dence is not automatically inadmissible to prove intent when the defendant unequivocally denies committing the charged acts. Such evidence may be admissible if it is (1) relevant to an issue other than character, (2) necessary, and (3) reliable. See United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). Moreover, its probative value must outweigh the danger of unfair prejudice. Fed.R.Evid. 403.
 
 
 8
 The government argues that the testimony was relevant for the purpose of showing Ingram's knowledge of the drug trade and her intent to engage in it. The relevancy hurdle is a low one, see Fed.R.Evid. 401, and the testimony at issue here was indeed relevant to show that Ingram was no stranger to the drug trade.
 
 
 9
 Rule 404(b) evidence may be "necessary" to the extent it "furnishes part of the context of the crime," Rawle, 845 F.2d at 1247 n. 4 (4th Cir.1988) (citation omitted). Much of Mbionwu's testimony focussed on Ingram's prior dealings with Ezeoke, who was implicated in the conspiracy with which Ingram stood charged. Other evidence in the case involved an intercepted telephone call to Ingram from Ezeoke in Nigeria during the period of the charged conspiracy. Mbionwu identified Ezeoke's voice for the jury, and his testimony about the 1988-89 dealings helped to explain the origins of the relationship between Ezeoke and Ingram.
 
 
 10
 Was it reliable? Although Mbionwu was testifying as part of a plea agreement, the weight and credibility is for the jury to evaluate. See Hernandez, 975 F.2d at 1040-41. Both the direct and crossexaminations of Mbionwu were extensive, and the jury was afforded adequate opportunity to make their credibility determinations.
 
 
 11
 Did the prejudicial effect outweigh the probative value? Because of the sheer magnitude of his testimony and the fact that Mbionwu was the only live witness to testify who had been involved in drug dealing with Ingram, albeit not during the charged conspiracy, we are inclined to find that the prejudicial effect was of some consequence. For the purposes of our plain error review, we will assume that the admission of the testimony about the prior drug dealings of the defendant was "error that is plain." Olano, 113 S.Ct. at 1776. We turn, then, to the third prong of the Olano test.
 
 
 12
 In light of the extensive wiretap evidence, the government prevails on the prejudice prong of Olano: "[I]n most cases, ... the error must have affected the outcome of the District Court proceedings." 113 S.Ct. at 1778. We are confident that the error did not affect the outcome below. Moreover, even if it is assumed that the error was prejudicial within the meaning of Rule 52(b) and Olano, the error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings," id. at 1779, and we decline to exercise our discretion to correct such an error.
 
 III
 
 13
 In its cross-examination of Mbionwu, the defense stressed the absence of documentary evidence to corroborate his testimony that Ingram had been involved in prior drug dealing. Mbionwu stated that he had no records to back up his claims. On redirect, the government produced a drug tally sheet that it said had just been found. Ingram objected to the introduction of the sheet, contending that it should have been disclosed during pretrial discovery. The court admitted the tally sheet into evidence but permitted defense counsel extra latitude in recross-examining Mbionwu. We find error,[1] and we must review to determine whether such error was harmless. Fed.R.Crim.P. 52(a).
 
 
 14
 In the recent case of United States v. Ince, 1994 WL 114801, at * 5 (4th Cir. April 7, 1994), we set forth the three factors to be considered when faced with nonconstitutional error that was properly objected to: "(1)the centrality of the issue affected by the error; (2)the steps taken to mitigate the effects of the error; and (3) the closeness of the case." On one level, the issue was Ingram's involvement in the drug trade prior to the charged conspiracy. More fundamentally, however, the issue affected by the error was Mbionwu's credibility. Mbionwu was an important government witness, but not an indispensable one. While the late introduction of the tally sheet no doubt undercut defense attempts to impeach the witness, it must be kept in mind that the tally sheet matter was only a small part of Mbionwu's overall testimony, testimony that occupies over 180 pages of trial transcript, and the cross-examination regarding his alleged lack of documentation occupies less than one page. While the government's explanation of the mid-trial discovery of the tally sheet strikes us as possibly being disingenuous, we are not prepared to say that it was a matter central to the trial.
 
 
 15
 As noted above, the trial judge allowed extra latitude to defense counsel in his recross-examination in order to mitigate the Rule 16(b) violation. The difficulty of assessing the mitigative effects of this step renders this a more or less neutral factor.
 
 
 16
 Finally, the case was not close. This is the "single most important factor in the nonconstitutional harmless-error inquiry." Id. at* 6 (internal quotation omitted). The wiretap evidence was devastating. We find that "it is highly probable that the error did not affect or substantially sway the judgment of conviction." Id. at* 5 (internal quotation omitted). The error was harmless.
 
 IV
 
 17
 Ms. Waltraud Trefill, a government witness, testified that Ingram brought four mink coats to Macy's in mid-1991 for storage (the receipt was found during the search of her car). The court refused to allow her to testify as an expert on the quality or value of the coats, but she was allowed to testify that the coats were "very beautiful, very stylish, nicer and better looking than the average coat." Evidence of unexplained wealth may be admissible, and it was a fair inference that these coats were Ingram's and that they were relatively expensive items. We find no error in the admission of this testimony.
 
 V
 
 18
 In the middle of the trial, Ingram made a motion to suppress the evidence seized from her car when she was stopped. At the suppression hearing, Agent Kula testified that the defendant initially refused to stop and had to be pursued by police. In accordance with police procedure, Ingram and her brother Walter were removed from the car, and Walter was arrested. Kula also testified that Ingram was not restrained, threatened or coerced in any way and that she consented to a search of the car. The search uncovered Ingram's pocketbook, and Officer Wissman[2] asked for permission to search it. Ingram again consented, and $2000 was found. All this was seized, and Ingram was permitted to leave.
 
 
 19
 Ingram gave a very different story. She said that she was forcibly removed from the car at gunpoint while the officers yelled obscenities at her and was held at gunpoint while the car was searched without her consent ever being requested. Ingram argued that even if verbal consent had been given, it had been exacted by coercion and was not voluntary.
 
 
 20
 The district court found the agents' testimony credible and ruled that "there was consent for the government to make the search of the car and to make search of the purse." On appeal, Ingram complains that the court failed to make findings on the voluntariness of the consent. Fed.R.Crim.P. 12(e) requires the court to state its "essential findings" on the record.
 
 
 21
 Ingram is correct that voluntariness was not specifically addressed by the court in the final statements from the bench. Given the argument preceding the ruling, however, the court's consideration of voluntariness can be inferred. Moreover, Ingram's counsel failed to mention the omission when the ruling was made. The entire focus of the argument of counsel was on whether the consent was voluntary, and the court's final question to the government counsel was whether the consent would have been voluntary if several of the agents had drawn their guns and asked for her consent. The finding of "consent" clearly encompasses a finding that the consent was voluntary.
 
 AFFIRMED
 
 
 [1]
 The government does not contest the district court's ruling that the failure to disclose the tally sheet to the defense constituted a violation of Fed.R.Crim.P. 16(b)
 
 
 [2]
 Wissman did not testify. Instead, counsel stipulated as to what he would say were he called. JA 281-82. He would have testified that Ingram consented to the search of her purse