**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 97-4103

JOE LEWIS BLACKWELL, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-96-109)

Argued: April 9, 1998

Decided: June 26, 1998

Before WIDENER and LUTTIG, Circuit Judges, and DOUMAR,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Anthony Wayne Harrison, Sr., HARRISON, NORTH,
COOKE & LANDRETH, Greensboro, North Carolina, for Appellant.
Clifton Thomas Barrett, Assistant United States Attorney, Winston-
Salem, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton,
Jr., United States Attorney, Winston-Salem, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Defendant, Joe Blackwell, Jr., was indicted for conspiring with Craig Fountain and others to distribute cocaine base "[f]rom prior to March, 1992, up to and including the present, the exact dates to the Grand Jurors unknown." J.A. at 7. Fountain testified at defendant's trial about his drug deals with defendant from 1987 forward. He testified that he had known defendant all of his life, J.A. at 25, and that he started selling cocaine powder for defendant in 1987 or 1988 when Fountain was 15, J.A. at 25-30. Fountain also testified that he and defendant began selling crack around 1989 and continued through 1991, J.A. at 30-31, when Fountain quit dealing to spend more time with his girlfriend. Fountain (who was apparently just below defendant in the distribution chain) testified that he began dealing drugs again with Mr. Blackwell "[a]round 1993" and continued from 1993 to 1994. J.A. at 32. After being released from prison in May 1995, Fountain again resumed his drug activities with Blackwell. J.A. at 32-34. A number of other witnesses also testified about their drug transactions with defendant. See Appellees' Brief at 5-7 (recounting this testimony). The jury convicted defendant of conspiracy to distribute cocaine base and the court sentenced defendant to 350 months in prison.

Defendant contends on appeal that the district court abused its discretion by admitting Fountain's testimony about drug transactions that occurred between him and the defendant in 1987 and 1988 and by permitting government cross-examination of a witness that exceeded the scope of direct examination. He also argues that the district court clearly erred in determining the amount of drugs attributable to him for sentencing purposes. Finding no error, we affirm defendant's conviction and sentence.

The district court did not abuse its discretion in admitting the testimony of defendant's co-conspirator, Fountain, about his drug deals

2

with defendant from 1987 forward. The indictment specifically charged that the conspiracy began "prior to March 1992," and thus contemplated admission of some evidence of conspiratorial acts that occurred prior to March 1992. More importantly, however, Fountain's testimony about pre-1992 drug transactions with the defendant is not 404(b) "other acts" evidence, but rather is evidence intrinsic to the charged conspiracy because it "completes the story" of the charged crime by explaining how Fountain met the defendant and how their drug-dealing relationship began and evolved.

In United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994), we held that the trial court did not err by admitting evidence of drug transactions that "involved different people and fell outside the charged conspiracy period." Id. The transactions at issue had occurred one to two years before the charged conspiracy. Id. The court explained:

> [The defendant's] argument erroneously assumes that all evidence falling outside the charged conspiracy period necessarily involves a separate, unrelated offense subject to the strictures of [Rule 404(b)]. It is well-established, however, that the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into "other crimes" evidence. Rather, evidence of uncharged conduct is not considered "other crimes" evidence if it "arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime (on) trial."

Id. (citations omitted). The court held that the evidence of other drug transactions provided context for the charged offense and "proved [defendant's] participation in drug distribution activities," and was thus not "other crimes" evidence under Rule 404(b). Id. at 886; see also United States v. Chin, 83 F.3d 83, 88-89 (4th Cir. 1996); United States v. McMillon, 14 F.3d 948, 954-55 (4th Cir. 1994) (testimony by co-conspirators about defendant's drug dealing and drug deals with the co-conspirators -- some of which predated the charged conspiracy by more than eight years -- was admissible under 404(b) to lay the "groundwork" for the conspiracy and to explain "how the ille-

3

gal relationship between participants in the crime developed") (citations omitted).

Similarly, Fountain's testimony in this case described the evolution of his drug-dealing relationship with the defendant and thus laid the foundation for, and "completed the story" of, the charged conspiracy. Therefore, it was not "other acts" evidence subject to the strictures of Rule 404(b).[1] Moreover, even if Fountain's testimony about his pre-1992 drug transactions with the defendant had been 404(b) evidence, the district court -- in an abundance of caution-- gave the jury a limiting instruction about that testimony that was more than sufficient to dispel any prejudice to defendant. J.A. at 27.

We also reject defendant's contention that the district court abused its discretion by permitting government cross-examination of a witness that exceeded the scope of direct examination. The government cross-examination of defense witness Lee Settle was permissible, even though it exceeded the scope of direct examination, because it was relevant to matters affecting the witness' credibility.

The defense called Settle to impeach the testimony of a government witness, Thomas Neal. Settle testified that, contrary to Neal's testimony, Neal had participated in a drug-related beating. J.A. at 205-07. On cross-examination, the government asked Settle (over objection) whether he had been involved in drug activity with the defendant and to describe the nature of that involvement. J.A. at 207-

_____

[1] The primary case relied on by defendant, United States v. Hernandez, 975 F.2d 1035 (4th Cir. 1992), addressed a very different set of facts. A witness in Hernandez testified that six months prior to the acts alleged in the indictment, he met the defendant at a clothing store, and she told him she had a "special recipe for cooking crack" because "she used to do that, sell that in New York." Id. at 1037. The court held that this evidence was inadmissible under 404(b), primarily because it was offered to prove intent in the charged conspiracy even though "[t]he testimony did not establish anything about [the defendant's] conduct or mental state during the course of the conspiracy alleged in the indictment." Id. at 1039. The evidence in question in Hernandez was obviously not necessary to complete the story of the charged offense or to explain the evolution of the relationship between the defendant and any of her co-conspirators.

4

08. Settle described how he and the defendant "used to meet in the pool room, you know, and just talk, hangout, shoot pool" and how he sold defendant an ounce or a half ounce of cocaine on three occasions and bought an ounce back from him on one or two occasions. J.A. at 208-09. This government cross-examination of Settle about his drug transactions with the defendant was permissible because it went to Settle's credibility: if he had a prior drug-dealing relationship with defendant, his testimony might be biased. Federal Rule of Evidence 611(b) specifically allows cross-examination to exceed the scope of direct when it is about matters affecting the credibility of the witness. See id. ("Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."). Indeed, the district court had the discretion to allow cross-examination that exceeded direct even if it was not relevant to the witness' credibility. See id. ("The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.").

In any event, even if the district court erred in allowing the government's cross-examination, Settle's testimony about a few drug transactions with defendant was harmless because six people had already testified that they either received cocaine from the defendant or sold cocaine to him during the charged conspiracy.[2] See Appellee's Brief at 4-6, 15.

Finally, the district court did not err in determining the amount of drugs attributable to defendant for sentencing purposes. Defendant argues only that the trial testimony relied upon by the district court in determining the attributed amount of drugs was "unacceptably vague in [its] description of the times and amounts of the controlled substance involved," and was incredible because it was provided only by witnesses who were testifying under plea bargains calling for "substantial assistance" and the different witnesses' testimony was contra-

_____

**2** The testimony of Craig Fountain alone established a drug amount of over two kilos, J.A. at 303-04, and that of Douglas McCain established a drug amount of four kilos, J.A. at 305. Defendant was also in possession of cocaine at the time of his arrest. Moreover, the drug transactions described by Settle apparently were not counted in computing the amount of drugs attributable to the defendant for sentencing. J.A. at 305.

5

dictory. Appellant's Brief at 12. Indeed, at the sentencing hearing, defense counsel agreed with the district court that the drug amount determination came down to a "question of credibility" and stipulated that there was sufficient evidence in the trial transcript to support the drug calculations in the pre-sentence report (PSR) if the court credited that testimony. J.A. at 268.

The district court clearly rejected defendant's arguments about the credibility of the government's witnesses and specifically found that the trial testimony relied on in the PSR was credible:

> I will find from having been involved in the trial, and having listened to the evidence in this case, that the evidence found by Mrs. Stafford [who prepared the pre-sentence report], from the various persons named in the pre-sentence report, does constitute credible evidence. And for that reason, the Court will find that the calculation made by Mrs. Stafford is supported by at least the preponderance of the evidence.

J.A. at 270. We will not second-guess this credibility determination by the district court.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

6