UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                    No. 01-4330

JOHN MICHAEL SULLIVAN,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, District Judge.
(CR-99-122-V)

Argued: January 25, 2002

Decided: February 28, 2002

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Richard Andrew Culler, CULLER & CULLER, P.A., Charlotte, North Carolina, for Appellant. B. Frederic Williams, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

John M. Sullivan, a computer programmer, upon getting upset with his employer, Lance, Inc., inserted a computer code (a "logic bomb") into the software he prepared for Lance. The code was designed to disable a communication function in Lance's hand-held computers. Sullivan then quit without telling anyone about the bomb. The bomb went off about four months later, disabling 824 hand-held computers used by Lance's sales representatives to communicate with the headquarters. Shortly thereafter, when confronted by the FBI, Sullivan confessed to planting the bomb. Sullivan was convicted for intentionally causing damage to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A).[1] He now appeals the admission of evidence seized from his home and the denial of his motion for judgment of acquittal.

### I.

Prior to Sullivan's trial, the government filed a notice pursuant to Federal Rule of Evidence 404(b), informing Sullivan that it intended to present certain evidence seized from Sullivan's home and from his home computer. That evidence included three versions of a web page (entitled "Dr. Crime") found on Sullivan's home computer, each of which Sullivan created in the period between his last day at Lance (June 1998) and his confession (October 1998) to creating the bomb; a plaque engraved with words "Dr. Crime's Terminal of Doom," which Sullivan referenced in his web page and which he placed above

---

[1]18 U.S.C. § 1030(a)(5)(A) provides that:

Whoever knowingly causes the transmission of a program, information, code, or command, and as result of such conduct, intentionally causes damage without authorization, to a protected computer; shall be punished as provided in subsection (c) of this section.

the computer containing the "Dr. Crime" web page and a copy of the logic bomb; and an e-mail from a friend of Sullivan, the content of which indicated that Sullivan published the "Dr. Crime" web page on the internet.

Sullivan starts out his "Dr. Crime" web page by explaining his fascination with computers and goes on to state:

> More than once I was accused (falsely?) of perpetuating acts of computer crime against various systems and agencies. But regardless if I did or didn't, I never got caught. . . . Of course, there was ALWAYS the chance I MAY have done the dirty deed — but I'd never admit it!

J.A. 41-42. Sullivan then describes the plaque and notes that it hangs in his office. He then observes that "although I have 'settled in' to a real job, Dr. Crime still lives . . . quietly, anonymously, and discreet." On the web page, Sullivan also discusses his "real job" experience at Lance and why he quit when new management arrived:

> I had a decent office, a growing staff, and stock options. Things started out well, but about a year into the job, there was a MAJOR management change. It seemed the new bosses had different ideas as to what should be done. After many months of butting heads, it was obvious that the new regime had no use for my talents. They had caused a dozen good people — *the real working and knowledgeable staff* — to leave, all because of the need to micromanage projects. There just wasn't enough room in the organization for me, them, and their egos, and eventually, I bid them fond farewell.

The last statement on the page is "No regrets, no fear."

The district court admitted the web page, the plaque, and the e-mail into evidence, concluding that "[this evidence] gives relevance to [Sullivan's] intent at the time of the crime." J.A. 65. The district court gave limiting instructions when that evidence was introduced to the jury, warning the jury not to consider the admitted evidence in decid-

ing whether Sullivan engaged in "the physical acts charged in the indictment," but only "in deciding whether, in doing the physical acts charged, he acted willfully, knowingly, intentionally, and unlawfully." J.A. 109-112.

Federal Rule of Evidence 404(b) allows evidence of "other crimes, wrongs, or acts . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *United States* v. *Queen*, 132 F.3d 991 (4th Cir. 1997), we articulated the following test for admission of prior acts under that rule:

> (1)   The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. . . .
>
> (2)   The act must be necessary in the sense that it is probative of an essential claim or an element of the offense.
>
> (3)   The evidence must be reliable. And,
>
> (4)   [T]he evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact-finding process.

*Id*. at 997.

We find unpersuasive Sullivan's arguments that the evidence fails each of these requirements. As to the first and the second, Sullivan's "Dr. Crime's Terminal of Doom" plaque and Sullivan's statements on the "Dr. Crime" web page were both relevant to establishing an element of the offense (the intent to cause damage to Lance through the transmission of the code) and "necessary in the sense that [they were] probative of [that] element." *Id*. Because Sullivan admitted that he had planted the code, but maintained that he did so only as a benign test and did not intend to cause any problems to Lance, *see*, *e.g.*, J.A. 483-84, Sullivan's state of mind at the time of the offense constituted the only real issue at trial. The plaque and his statements on the web page about his "dirty deed[s]" of invading computer systems and

about his hostility toward Lance, are directly relevant to whether he planted the bomb with unlawful intent or, as he contends, innocently. That these statements were made during the period in which Sullivan could have notified Lance about the bomb and thereby prevented most of the harm makes them all the more probative of the critical element of his intent to cause damage.

The evidence also satisfies the requirement of reliability. Sullivan admitted that he created the web page and that he owned the plaque, the contents of which were probative of his intent to damage Lance. Sullivan's insistence that neither the web page nor the plaque state outright that he committed other computer crimes has nothing to do with the reliability of the admitted statements for the purpose of showing Sullivan's intent to commit this particular crime.

Finally, Sullivan offers no credible argument that the admitted evidence evoked "emotion in place of reason as a decisionmaking mechanism" and was thus unduly prejudicial. *Queen*, 132 F.3d at 998. In any event, the limiting instructions avoided any undue prejudice that might otherwise have resulted.

Sullivan's reliance on *United States* v. *Hernandez*, 975 F.2d 1035 (4th Cir. 1992), is misplaced. In that case, intent was not contested, rendering irrelevant the evidence that was admitted under Rule 404(b).

Accordingly, we conclude that the district court did not abuse its discretion in admitting the evidence pursuant to Rule 404(b).

II.

Sullivan also challenges the denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, claiming that there was insufficient evidence to support his conviction. He argues, first, that the government did not prove that he "knowingly cause[d] the transmission," 18 U.S.C. § 1030(a)(5)(A), of his logic bomb to the hand-held computers. This claim is meritless. Sullivan admitted that he made certain changes to the program and inserted the code into Lance's computer system with full knowledge that if no one detected

the code, it would make its way to the hand-held computers. J.A. 541-45; J.A. 318. That is, he admitted to "knowing[ ] . . . transmission" of the code.

Second, Sullivan asserts that the government did not establish that Lance sustained damage "during any 1-year period," 18 U.S.C. § 1030(e)(8)(A) (defining damage as "any impairment . . . causing loss aggregating at least $5,000 in value during any 1-year period"). The parties stipulated that "Lance spent $17,370 for memory cards . . . to distribute to sales representatives to delete the code placed . . . by the defendant." J.A. 386. Sullivan points out that this stipulation did not contain any date reference and approximately sixteen months elapsed between the day the bomb went off and the trial. Thus, Sullivan claims, it is not clear that the money for new memory cards was spent within one year of the bomb going off. However, Sullivan's replacement testified that Lance's sale representatives got their new memory cards shortly after the bomb went off, and that all the problems relating to the bomb were fixed within a few days. *See* J.A. 244-253, 269. Indeed, Lance had no choice but to replace memory cards expeditiously, given that the problem Sullivan caused made communications between sales representatives and headquarters impossible. *See* J.A. 249. This uncontested testimony provides sufficient evidence for the jury to conclude, beyond a reasonable doubt, that Lance replaced the memory cards within a few days after the discovery of the defect in the software.

The district court did not err in denying Sullivan's Rule 29 motion.[2]

## *CONCLUSION*

For the reasons stated herein, Sullivan's conviction and sentence are affirmed.

*AFFIRMED*

---

[2]Sullivan's arguments that the statute cannot be enforced absent "actual destruction of a computer system" and that the statute requires a specific intent instruction have no basis in the text of the statute. We also reject Sullivan's equally meritless claim as to the calculation of loss for the purpose of sentencing.