UNITED STATES of America, Appellee,

v.

Thomas G. HEYWARD, Appellant.

No. 82–5183.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1983.

Decided March 5, 1984.

Rehearing Denied April 13, 1984.

Randolph Murdaugh, III, Ridgeland, S.C. (John W. Hendrix, Savannah, Ga., Roberts Vaux, Hilton Head Island, S.C., on brief), for appellant.

Wells Dickson, Asst. U.S. Atty. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and BULLOCK,[*] District Judge.

BULLOCK, District Judge:

Thomas G. Heyward was convicted in March 1982, in a trial by jury, of two counts of income tax evasion in violation of 26 U.S.C. § 7201. The government's case rested on the net worth theory of proof, which requires either a negativing of all the possible nontaxable sources of the defendant's net worth increases over the years in question, or the establishment of a "likely source" of income. *United States v. Massei*, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). The instant case proceeded along the latter route, with the government convincing the jury that Heyward's increases in net worth were attributable to drug-smuggling activities.

---

[*] Honorable Frank W. Bullock, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

## I.

Heyward's defense was that any increase in net worth was due to a $175,000.00 loan he received from a man named Robert Horan, who died before these proceedings began. Horan's widow, business partner, and accountant each testified, however, that Horan did not have access to that amount of cash, that it would have been impossible for him to make that sizeable a loan, and that they had never heard of Heyward before. Heyward could present no note evidencing the indebtedness and claimed that the funds had been kept in a strongbox under his bed.

During the trial Heyward's attorney attempted to introduce into evidence a memorandum from the files of the deceased attorney who had handled Horan's estate, Robert O. Bowden. The memorandum, signed "R.O.B.," stated:

> After several calls to various people ..., it turns out that Bob Horan had a Navajo B which he owned with Gary Scott and goes under the numbers of 33FZ. They also thought he had a Navajo Chieftan at Grumman American under the numbers 80RS or 80RJ, but it may have been sold about a week before he died. In conjunction with that, Savannah Bank reported to the FBI that he came in with $100,000 cash and turned it into a cashier's check payable to the C & S Bank, and this would conform with the indebtedness situation on his plane which he probably paid off.

In response to the prosecution's hearsay objection, Heyward's attorney claimed that the memorandum satisfied Fed.R.Evid. 804(b)(5), the residual hearsay exception. That rule states:

> Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes it known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The trial judge refused to admit the memorandum into evidence, principally on the ground that counsel had not given the prosecution the required advance notice,[1] but also because he questioned whether it was more probative than other reasonably available evidence.

We decline to extend the residual hearsay exception to the memorandum in question for the latter reason. We are mindful that Rule 804(b)(5) was not written to be used as a "new and broad hearsay exception," *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir.1980), but was meant to be "invoked sparingly." *Robinson v. Shapiro*, 646 F.2d 734, 742 (2d Cir.1981). *Accord Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir.1979). The legislative history of the rules puts it more strongly: "It is intended that the residual hearsay exceptions will be used

---

**1.** Courts have generally construed the notice requirements of 804(b)(5) and its companion rule 803(24) strictly. *See, e.g., United States v. Atkins,* 618 F.2d 366, 372 (5th Cir.1980); *United States v. Ruffin,* 575 F.2d 346, 358 (2d Cir.1978). When new evidence is uncovered on the eve of trial, however, advance notice is obviously impossible. Recognizing that practical realities in this instance bar compliance with the letter of the rule, at least one court has granted a continuance to allow the party entitled to advance notice an opportunity to prepare to meet the evidence. *United States v. Bailey,* 581 F.2d 341, 348 (3d Cir.1978); 4 J. Weinstein and M. Berger, *Weinstein's Evidence* 803–294 (1982) (continuance is the proper remedy); *see also* Fed.R.Evid. 102 ("These rules shall be construed to secure fairness in administration ... to the end that the truth may be ascertained ....").

very rarely, and only in exceptional circumstances." Fed.R.Evid. 803 Senate committee note (quoted in *United States v. Kim*, 595 F.2d 755, 765 [D.C.Cir.1979]). Those exceptional circumstances are lacking here, for the Horan memorandum fails to meet the requirement of 804(b)(5)(B) that it be "more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts."

■ Testimony by an officer of Savannah Bank would quite clearly be more probative of Horan's possession of $100,000.00 than is the file memorandum of the late Mr. Bowden. Bowden procured this information through a telephone call, and it hardly seems unduly burdensome to require defendant's counsel to duplicate that feat. The trial judge granted a recess to allow defendant's counsel to obtain this testimony, but the issue was not raised again the next morning, and we can only conclude that defense counsel himself questioned the value of the testimony.

Other courts have been equally loath to apply the residual hearsay exception when it would not be difficult to go behind the proferred hearsay to reach more solid evidence. In *United States v. Kim*, 595 F.2d 755 (D.C.Cir.1979), for example, defendant attempted to introduce a telex from his bank in Korea regarding $400,000.00 which he had on deposit there. Defendant's aim was to prove that he had other sources of funds and would not have accepted money to bribe members of Congress. The court refused to apply the residual hearsay exception, stating "[m]uch stronger evidence of alternative sources of income would be the actual business records reflecting the profitable business activities which produced that income, or testimony from business partners, employees and accountants as to the actual income source in some active business of Hancho Kim." *Id.* at 766. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1190, 1264–65 (E.D.Pa.1980); *In re Sterling Navigation Co.*, 444 F.Supp. 1043, 1046–47 (S.D.N.Y. 1977).

## II.

■ Heyward next claims that the Horan memorandum constitutes exculpatory material which the government had a duty to turn over to him under the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Assuming for the sake of argument that the prosecution had possession of the memorandum prior to trial, *Brady* has never been interpreted to require a prosecutor to throw open his files to opposing counsel. A prosecutor does not have "a constitutional obligation to disclose any information that might affect the jury's verdict." *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Thus every failure to make a disclosure is not reversible error.

■ The standard by which a prosecutor's failure to turn over allegedly exculpatory material must be judged is one of materiality. The United States Supreme Court has framed the question in terms of the strength of the evidence: "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *Id.* at 112, 96 S.Ct. at 2401. We thus turn to the Horan memorandum to determine whether its evidentiary impact would have risen to this level.

■ The Horan memorandum states merely that Horan had apparently sold one of his aircraft and had entered the Savannah Bank with $100,000.00 in cash, the proceeds from that sale, which he converted to a cashier's check made out to the lienholder on that aircraft. It makes no connection between Horan and the defendant, evidence of which was also entirely lacking at trial. It does not establish that Horan had access to large amounts of cash which he might conceivably have lent to the defendant. In short, we do not find the Horan memorandum to be so probative of Heyward's innocence that it should be considered error for the prosecution not to have disclosed it.

## III.

 Heyward's final contention is that the trial court erred in admitting into evidence that his plane was found in Georgia loaded with over 4,000 pounds of marijuana. This evidence was an integral part of the government's proof that Heyward's additional income had come through drug smuggling. Heyward's principal objection appears to be that there is insufficient evidence to link him to the plane's cargo.[2] We find this argument unpersuasive. Heyward was the record owner of the plane and presented no evidence that it had been stolen. In fact, one day before its recovery by state agents in Georgia, Heyward asked one of his employees if the plane had returned. Other evidence also led to the conclusion that the plane was being used for illicit purposes. The plane was allegedly used for mosquito spraying, but the tanks for the insecticide opened into the main fuel tanks, giving the plane a range far greater than that needed for its purported purpose. Hilton Head Air Service, a corporation owned by Heyward, purchased approximately 15,000 to 20,000 gallons more fuel than they had recorded selling during 1976–78 and no explanation was provided for its disappearance. On one instance in January 1980, the corporation was missing 1,600 gallons from the close of business one night to its opening the next morning. These circumstances suggest a number of previous clandestine trips by Heyward.

Heyward also argues that the trial court erred in allowing the government to introduce evidence of the discovery of the drug-laden plane in 1980 to substantiate its net worth claims for 1978 and 1979. We do not find the discovery of the plane in February 1980 to be so temporally remote from the two previous years which were the subject of this indictment as to render the evidence inadmissible. *See, e.g., Beard v. United States,* 222 F.2d 84, 92 (4th Cir.) (discovery of gambling equipment on defendant's premises in 1945 admissible in net worth case in 1944), *cert. denied,* 350 U.S. 846, 76 S.Ct. 48, 100 L.Ed. 753 (1955). The time difference was simply a matter to be considered by the jury. *See United States v. Wright,* 667 F.2d 793, 800 (9th Cir.1982).

As there was no reversible error in the trial court proceedings, the appellant's conviction is

AFFIRMED.

---

**2.** Heyward also contends that this evidence was "more prejudicial than probative," an allusion to Rule 403, Fed.R.Evid., under which relevant evidence may be excluded if the trial court finds that "its probative value is substantially outweighed by the danger of unfair prejudice." The trial court has wide discretion in this area, however, and its determination will not be overturned except under the most "extraordinary" of circumstances. *United States v. MacDonald,* 688 F.2d 224, 227–28 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). We find no such circumstances in the present case.