854 F.2d 1318
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Olakunle Lanre ARIGBEDE, a/k/a The Doctor, a/k/a Kunle,
Defendant-Appellant.
 No. 87-5141.
 United States Court of Appeals, Fourth Circuit.
 Argued June 10, 1988.
Decided July 28, 1988.
 
 Marlon S. Charles (Adrian R. Prince, Marlon Charles & Associates on brief) for appellant.
 Gregory Welsh, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 Before DONALD RUSSELL and MURNAGHAN, Circuit Judges, and PAUL V. NIEMEYER, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Convicted of possession and distribution of heroin, Olakunle Arigbede now appeals, raising two claims: (1) that the trial court abused its discretion in denying him a continuance of his trial so he could secure the attendance of a particular absent witness; and (2) that the trial court erred in excluding from evidence a letter sent by that absent witness.
 
 
 2
 The defendant failed, however, to meet the basic requirements established in this Circuit for a continuance due to unavailability of a witness, because he never told the trial court what the witness' testimony would consist of, did not establish that the testimony would be admissible if given, and did not give the court any reliable estimate of when the witness would be present. Even if the witness had been present, the testimony would have consisted of inadmissible hearsay. In addition, there were two eyewitnesses who testified about the transaction in question in a manner favorable to Arigbede, so the defense was not denied the opportunity to develop its theory of the case.
 
 
 3
 As for the letter from the absent witness, the contents of the letter were properly barred from evidence as inadmissible hearsay. Again, the defendant failed to follow proper procedures to secure the letter's admission. The defendant did not ask the judge to admit it under any hearsay exception, and raises the argument for admissibility under an exception for the first time on appeal. In any event, even if the defendant had raised the Fed.R.Evid. 804(b)(5) hearsay exception at trial, it would properly have been denied because the defendant did not comply with the exception's requirements. First, the government was not given sufficient advance notice. Second, circumstantial guarantees of trustworthiness are noticeably lacking. Finally, the document is less probative, not more probative, than other available evidence because three witnesses to the transaction in question, the two favorable to Arigbede already mentioned and one supportive of the government's contentions, testified.
 
 I.
 
 4
 Arigbede, a Nigerian, was Executive Director for Overseas Operations of the Islamic Scientific Educational Research and Development Foundation for Africa, an organization that is based in Lagos, Nigeria and "is committed to the scientific propagation of Islam in Africa and the world over." He claims that the financial transactions used as evidence against him were educational loans made by the organization through him to Nigerian students who were having temporary difficulties securing foreign exchange to pay their tuition and other school-related bills.
 
 
 5
 Arigbede was indicted under seven counts for possession, distribution, conspiracy to possess, and conspiracy to distribute heroin. In January, 1987, two undercover police agents (one Drug Enforcement Agency agent and one Baltimore police officer) arranged heroin transactions with Adewale Aladekoba (who was indicted along with the defendant). The officers testified at Arigbede's trial that they observed a rendezvous during which Aladekoba and the defendant exchanged money and heroin. Aladekoba testified at the trial that all of the heroin he provided the agents in January and February, 1987, was supplied by Arigbede. The prosecution also put into evidence a handwritten note from Arigbede to Aladekoba demanding repayment of $9,000, "$6,000 on this batch and $3,000 on the previous one with Deinde." The prosecution argued at trial that the note referred to money owed by Aladekoba for heroin supplied by Arigbede. Aladekoba testified also that the $9,000 mentioned in the note was drug money and not an unpaid educational loan.
 
 
 6
 The defense to the charges consisted of a claim that the money referred to in the note was, in fact, the aggregate of two loans for educational purposes, and that Arigbede had met with Aladekoba in January (the meeting witnessed by the officers) because Aladekoba had asked him to come so he could repay the educational loan. The defense presented testimony from the part-time secretary for the Foundation (now called the Moslem World League) and from Arigbede himself. Both testified that the $9,000 was lent to Aladekoba for educational purposes.
 
 
 7
 The defense also wanted to call as a witness the secretary general of the organization, but Arigbede found out during the weekend before trial that the secretary general's passport had been seized in Nigeria and he had not been able to leave Nigeria for the United States during the weekend as planned. Arigbede's counsel told the district judge that the secretary general was "a very essential witness with respect to Mr. Arigbede's transactions." Arigbede then told the judge, "I spoke with him this morning. He should be able to make it here. He should be able to get a new passport and make it here no later than next week." The district judge refused to grant a continuance, noting that the case had been set for trial two weeks earlier and had been continued so that Arigbede could change counsel. Arigbede's counsel noted his objection to the trial proceeding, and the district judge said, "If you wish to make a proffer as to what that individual would testify to, you, of course may do so at the appropriate time." Later that day, presumably after the voir dire, the court told Arigbede's counsel that he could make a proffer with respect to the absent witness "tomorrow morning." No such proffer of proposed testimony was ever made by Arigbede.
 
 
 8
 The defense also attempted to offer into evidence a letter from the secretary general. The letter states that the substance of the records available at the Foundation:
 
 
 9
 shows that upon request from The Executive Director, Overseas Operations--Brother Kunle Arigbede Muhammed, has been given consent and authority to loan [sic] an amount of US$9,000.00 ... to a friend for the payment of school fees.... Informations [sic] reaching the General Secretariat proves that the first amount being US$6,000.00 was given in BATCH US$6,000.00 (BATCH SIX THOUSAND U.S. DOLLARS) by Kunle Arigbede Muhammed to one Mr. Wale Johnson Aladekoba on the 27th day of October, 1987. The remaining amount of US$3,000.00 ... which brings the total approved amount to US$9,000.00 for the loan was given out by The Assistant Secretary General in person of Brother Deinde Mohammad in BATCH US$3,000.00 (BATCH THREE THOUSAND U.S. DOLLARS) to same Mr. Wale Johnson Aladekoba by Brother Kunle's consent on the 30th day of October, 1987.
 
 
 10
 The government opposed the introduction of the letter on the grounds that it was inadmissible hearsay, and the court allowed reference only to the identity of the heading of the letter and the signature (the jury thus was told that the letter had been received, but not told its contents).
 
 
 11
 The jury found Arigbede guilty of all charges in the indictment, and he was sentenced to 12 years in prison.
 
 II.
 
 12
 The district judge did not abuse his discretion in denying a continuance. Arigbede failed to meet the requirements for seeking a continuance based on the temporary unavailability of a witness, and the lack of that witness did not deny him a fair trial.
 
 
 13
 Whether to grant a continuance is a matter committed to the sound discretion of the district court. United States v. Johnson, 732 F.2d 379, 381 (4th Cir.1984), cert. denied, 469 U.S. 1033 (1984); United States v. Hutchison, 352 F.2d 404, 405 (4th Cir.1965). We have stated that "[t]he party seeking a continuance generally must show that a delay is necessary for a just determination of the case." United States v. Clinger, 681 F.2d 221, 223 (4th Cir.1982), cert. denied, 459 U.S. 912 (1982). In Clinger, the court stated:
 
 
 14
 When a continuance is sought to secure the attendance of a witness, the following elements must be proved by the party requesting the continuance: "who [the witnesses] are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set."
 
 
 15
 681 F.2d at 223 (quoting Neufield v. United States, 118 F.2d 375, 380 (D.C.Cir.1941), cert. denied, 315 U.S. 798 (1942)).
 
 
 16
 Here, Arigbede failed to meet at least three of the five requirements. He did tell the court who the absent witness was (the secretary general). He did not tell the court what the secretary general's testimony would be, even though he was given an opportunity to do so. He also did not show that the testimony (presumably about the $9,000 "loan") would, if given, be relevant and competent. He could not have shown that even if he had tried, because the secretary general's testimony about the "loans" would have been inadmissible hearsay. Because the secretary general was in Nigeria, and learned of the loans only after they were made by Arigbede, he could not have any direct knowledge about the loans. The secretary general would have been able only to testify that Arigbede or Arigbede's secretary had told him that $9,000 was given to Aladekoba as educational loans.
 
 
 17
 In addition, Arigbede did not give the district court any information to indicate that the secretary general could "probably be obtained" if the continuance were granted. All Arigbede did was to tell the judge that the secretary general "should be able to get a new passport and make it here no later than next week." No information was provided to inform the court why the passport had been seized, how long it takes to recover or issue passports in Nigeria, or what the secretary general's definite travel plans were.
 
 
 18
 There might be reluctance to deny the appeal only for failure to comply with Clinger if it truly appeared that Arigbede had been denied a fair trial by the absence of the witness. However, that is not the case here. The secretary general's testimony about the loans was inadmissible hearsay, so his testimony would have been limited to affirming that Arigbede was a representative of his organization (a fact not in dispute and not particularly relevant). In addition, even if the secretary general's testimony were admitted it would have been no more than cumulative. Direct testimony from the only eyewitnesses to the "loan" transaction was presented at trial--Arigbede and his secretary testified for the defense, while Aladekoba, the recipient of the loans alleged to be educational, testified for the government that he received the money for drugs.
 
 III.
 
 19
 The letter from the secretary general was properly barred by the district court. Arigbede argues on appeal that the letter should have been admitted into evidence under the general residual exception to the hearsay rule contained in Fed.R.Evid. 804(b)(5). The first problem is that the argument was not presented to the district court. Arigbede never asked that the document be admitted under an exception to the hearsay rule. The second problem is that even if the defendant had asked, the court would properly have refused because the requirements of Fed.R.Evid. 804(b)(5) were not met.
 
 
 20
 The letter clearly contains hearsay because the secretary general was not present when the "loans" were made and had no direct knowledge about them. His information had to come from Arigbede or someone else. To qualify for the residual exception to the hearsay rule, a statement must have circumstantial guarantees of trustworthiness comparable to those covered by the specific exceptions, plus (a) be offered as evidence of a material fact, and (b) be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; and (c) the general purposes of the rules of evidence and the interests of justice must be best served by admission. See Fed.R.Evid. 804(b)(5). In addition, under the rule, the proponent must make known to the adverse party "sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it." Id.
 
 
 21
 The document fails to satisfy Fed.R.Evid. 804(b)(5) on several grounds. Circumstantial guarantees of trustworthiness are lacking because the letterwriter's interest, if any, is clearly aligned with the defendant. In addition, no business records of the organization were offered to support the secretary general's statement (Arigbede has repeatedly claimed that all his business records were destroyed by the police during a search, while the government has categorically denied that any records were taken or destroyed).
 
 
 22
 The document is offered as evidence of a material fact, in that it goes to support Arigbede's theory, but it is less probative on the point for which it is offered than other evidence that was presented at trial. Again, the testimony by actual witnesses to the transaction (Arigbede, Arigbede's secretary, and Aladekoba, the alleged recipient of the loan) is the most probative evidence of the transaction.
 
 
 23
 As for serving the general purposes of the rules of evidence and justice, the secretary general's letter is the very type of thing the hearsay rule is designed to bar. There has been no showing that the secretary general obtained the information in the letter from anyone other than Arigbede himself. Indeed, it is clear that Arigbede caused the letter to be sent and may well have drafted it or otherwise influenced the text.
 
 
 24
 Finally, the government has pointed out that it was not given the required notice because it learned of Arigbede's intention to offer the document for the first time at trial.
 
 
 25
 The Fourth Circuit has noted that the residual exception to the hearsay rule is meant to be "invoked sparingly," and that the exception is to be used "very rarely, and only in exceptional circumstances." United States v. Heyward, 729 F.2d 297, 299-300 (4th Cir.1984), cert. denied, 469 U.S. 1105 (1985). The court in Heyward also noted that "[c]ourts have generally construed the notice requirements of 804(b)(5) ... strictly." 729 F.2d at 299 n. 1. There is no reason to invoke the residual exception in this case. The document in question does not satisfy the exception's basic requirements in any event.
 
 
 26
 AFFIRMED.