**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                        No. 95-5668

DARRELL BRACEY,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                        No. 95-5670

RONALD M. HUMPHRIES,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                        No. 96-4008

LINWOOD GRAY,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CR-94-241-DKC)

Argued: November 1, 1996

Decided: December 30, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Jackson Garber, Washington, D.C.; William B. Purpura, Baltimore, Maryland, for Appellants. Barbara Suzanne Skalla, Assistant United States Attorney, John Vincent Geise, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** David Ash, Baltimore, Maryland, for Appellants. Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Darrell Bracey, Ronald M. Humphries, and Linwood Gray appeal their convictions of conspiracy to distribute heroin and cocaine. They argue that the district court erred in admitting evidence seized pursuant to an illegal search warrant and in allowing the admission of an unavailable witness's grand jury testimony. They also assert that the evidence at trial presented multiple conspiracies instead of a single conspiracy, resulting in a material variance from the indictment, and requiring the district court to grant a multiple conspiracy instruction. Finally, appellants raise a series of issues regarding their sentences. We find that the district court committed no error, and therefore affirm.

I.

Gray, Humphries, and Bracey were all convicted of conspiracy to distribute cocaine and heroin. Gray and Humphries were also convicted of distribution of heroin. Bracey received a sentence of 360

2

months. Humphries received a sentence of 188 months and was ordered to forfeit $200,000. Gray received a sentence of 405 months and was ordered to forfeit $1,500,000, as well as jewelry sold to him as part of the government's investigation.

II.

The first issue raised on appeal is the district court's denial of Humphries' motion to suppress evidence. Humphries claims that the search warrant at issue was deficient because the supporting affidavit offered little proof that he lived at the searched premises, and offered no link whatsoever between the premises and criminal activity.

On June 7, 1994 a magistrate issued a search warrant for a house located at 4605 Jean Marie Drive, Oxon Hill, Md. The affidavit in support of the warrant cited several facts to establish that Humphries resided at Jean Marie Drive. Special Agent Robert Passmore of the IRS provided information that Humphries used the residence. Humphries drove a light blue truck that was seen parked in front of the house on several occasions. Telephone records indicated that the telephone service for the address was registered to a Helen Humphries.

As for the connection to criminal activity at the premises, Special Agent Crosby, the affiant, opined that drug dealers (and the affidavit set forth evidence indicating that Humphries was a drug dealer) often store drugs and other evidence of drug trafficking where they live. Agent Crosby based this statement upon his three years experience as a drug agent and his training.

In United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993), we recognized that "[i]n this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence. . . . Where no evidence connects the drug activity to the residence, the courts have found the warrant defective." Application of this standard to the affidavit at issue indicates that the evidence presented was relatively thin; there were few facts to establish either that Humphries resided at the residence or that the residence was related to drug activity.

However, because we find that the officers in this case acted in good faith, we need not reach the validity of the warrant itself. Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 926 (1984). There can be little doubt that Leon applies in this case. Although the warrant at issue may be on the borderline, it certainly "is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable." Lalor, 996 F.2d at 1583. The fact that both the magistrate judge and district court subsequently found probable cause further supports this conclusion. Id.

III.

Appellants also challenge the district court's admission of the grand jury testimony of Joyce Chambers. Chambers was unavailable to testify at trial, and the district court admitted her grand jury testimony under the "other exceptions" hearsay provision. Fed. R. Evid. 804(b)(5). Appellants challenge this admission on two grounds. First, they argue that there was insufficient evidence of trustworthiness to satisfy the Confrontation Clause. Second, they argue that the government failed to afford them the notice required by Rule 804(b)(5).

A.

Joyce Chambers appeared before the grand jury on August 2, 1994 and testified as follows. She had cooperated with the DEA in a plan to sell jewelry to Gray in exchange for cash and heroin. Gray knew that Chambers was a jewelry thief, and that she sold the jewelry she stole. On numerous occasions from December 1992 through April 1993 Gray exchanged drugs and cash for jewelry Gray thought that Chambers had stolen. Gray, Humphries, and Bracey all delivered heroin to her at different times.

Throughout the course of Chambers' cooperation with the government, her encounters with the appellants were well documented. Chambers made hand-written notes after each meeting, which were later typed by government agents, and signed by Chambers. She also

4

wore a wire during these meetings, and her telephone calls to Gray were recorded.

Appellants argue that the district court erred in permitting Chambers' grand jury testimony to be read to the jury when she was unavailable to testify at trial. They assert the grand jury testimony constituted hearsay unaccompanied by sufficient indicia of trustworthiness to satisfy the Confrontation Clause. We review findings of sufficient indicia of trustworthiness for clear error. See United States v. Workman, 860 F.2d 140, 144 (4th Cir. 1988).

There are two requirements for admitting incriminating out-of-court statements under the Confrontation Clause: (1) the prosecution must show that the witness was unavailable and (2) the statement "bears adequate `indicia of reliability.'" Idaho v. Wright, 497 U.S. 805, 814-15 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)). Appellants do not dispute that Chambers was unavailable. Therefore, the only issue is whether the district court committed clear error by holding that Chambers' testimony bore adequate indicia of reliability.

In Idaho v. Wright the Supreme Court held that trustworthiness is established from the totality of the circumstances surrounding the making of the statement. 497 U.S. at 819-20. In this case the circumstances surrounding the statement strongly suggest reliability. Chambers testified voluntarily before the grand jury, see United States v. McHan, No. 94-5464, 1996 WL 692128, at *10 (4th Cir. Dec. 4, 1996), under oath, and subject to prosecution for perjury. She testified "from personal knowledge." Id. Virtually all of Chambers' testimony could be independently verified by government agents who had tape recorded Chambers' interactions with the appellants. See United States v. Ellis, 951 F.2d 580, 583 (4th Cir. 1991). Chambers referred to her own notes to refresh her memory, and government agents could use those notes to double check the veracity of Chambers' testimony. In such circumstances there would be little opportunity for Chambers to perjure herself, let alone any possible motivation. As such, the district court did not err in admitting Chambers' testimony.

B.

Appellants also argue that the admission of Chambers' testimony violates the notice provisions of Fed. R. Evid. 804(b)(5).

5

Approximately two or three weeks before the trial the government discovered that Chambers was missing. Up until, and during, the trial the government continued to search for Chambers, and hoped she would appear as a live witness. Appellants make no claim that the government failed to search diligently for Ms. Chambers. On the first Friday of the trial, January 13, 1995, the government met ex parte with the trial judge and explained that Chambers was missing, and that the government was continuing to search for her. The government argued, and the district court agreed, that because the appellants were accused of attempting to kill Chambers, informing the defense that she was out of government custody might endanger her life. A week later, on January 20, 1995, the government realized it was unlikely that Chambers could be located in time to testify, and informed both the court and the appellants that it planned to introduce Chambers' grand jury testimony. The court adjourned from January 24 until January 27 to allow the defense to prepare for the grand jury testimony. On January 27 the grand jury testimony was read to the jury.

The notice requirement of Rule 804(b)(5) provides:

> a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 804(b)(5). Appellants argue that the district court erred in admitting Chambers' testimony because the government did not inform them that Chambers was unavailable until mid-trial, and the government knew prior to the trial that Chambers was missing. We review the admission of hearsay statements for abuse of discretion. Ellis, 951 F.2d at 582.

Appellants treat the notice provisions of Rule 804(b)(5) as if those requirements present an absolute bar to admission without pre-trial notification. We have recognized that although the notice requirements of Rule 804(b)(5) are construed "strictly," when "new evidence

6

is uncovered on the eve of trial . . . advance notice is obviously impossible." United States v. Heyward, 729 F.2d 297, 299 n.1 (4th Cir. 1984). Further, when "reasonable steps" have been taken to locate an unavailable witness, and "pretrial notice was wholly impracticable," a court should grant "notice flexibility" under Rule 804(b)(5). United States v. Baker, 985 F.2d 1248, 1253 n.3 (4th Cir. 1993).

In such a circumstance "a continuance to allow the party entitled to advance notice an opportunity to prepare to meet the evidence" is often the preferred remedy. Heyward, 729 F.2d at 299 n.1. See also Furtado v. Bishop, 604 F.2d 80, 92 (1st Cir. 1979); United States v. Bailey, 581 F.2d 341, 348 (3d Cir. 1978); Michael H. Graham, Federal Practice and Procedure: Evidence § 6775, at 745-47 (Interim Edition 1992); 4 Jack B. Weinstein et al., Weinstein's Evidence ¶ 803(24)[01], at 803-441 (1996). Furthermore, in cases where the defense was substantially aware of the gist of the testimony courts have also waived the notice requirement. United States v. Panzardi-Lespier, 918 F.2d 313, 317-18 (1st Cir. 1990); United States v. Leslie, 542 F.2d 285, 291 (5th Cir. 1976).

Here virtually all of these factors support the district court's decision to allow the admission of Chambers' grand jury testimony despite the lack of notice. The government brought Chambers' absence to the attention of the court ex parte in a timely fashion. The district court correctly decided that the possible danger to Chambers' safety justified a delay in informing the appellants of her disappearance from government custody. When it became apparent that Chambers would not be found in time to testify, the government informed the appellants of Chambers' unavailability and the necessity of admitting the grand jury testimony. The district court then properly granted the appellants a continuance to prepare for Chambers' testimony. Six days, including Saturday and Sunday and a two day continuance, passed between the notice to the defense and the reading of Chambers' testimony to the jury. Moreover, the defense knew from the indictment that Chambers' testimony would be a major aspect of the government's case, and knew the substance of her testimony. Finally, the district judge instructed the jury to give particular scrutiny to Chambers' testimony.

For these reasons, this is a strong case for "notice flexibility," Baker, 985 F.2d at 1253 n. 3, and the district court did not err.

IV.

Bracey and Humphries present two related arguments concerning their conspiracy convictions. First, they assert that the evidence of multiple conspiracies presented at trial was materially different from the indictment and established an impermissible variance. They also contend that the district court erred in failing to grant a multiple conspiracy jury instruction.

A.

"In a conspiracy prosecution, a defendant may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994), cert. denied, 115 S.Ct. 939 (1995). "A variance occurs when the government produces so little evidence on a charge in the indictment that the charge should not even be sent to the jury." United States v. Ford, 88 F.3d 1350, 1360 (4th Cir. 1996). Even if a variance is proven, "[a] variance constitutes a legitimate grounds for reversal only if the appellant shows that the variance infringed his `substantial rights' and thereby resulted in actual prejudice." Kennedy, 32 F.3d at 883. To make a showing of actual prejudice an appellant must prove that "`there [were] so many defendants and so many separate conspiracies before the jury' that the jury was likely to transfer evidence from one conspiracy to a defendant in an unrelated conspiracy." Id. (quoting United States v. Caporale, 806 F.2d 1487, 1500 (11th Cir. 1986)).

Count one of the indictment names Gray, Bracey, and Humphries as co-conspirators. Bracey and Humphries argue that the bulk of the evidence presented at trial concerned only Gray, and that the evidence against them proved a separate conspiracy to cooperate with Gray in trading drugs for jewelry with Chambers. To the contrary, as the district court correctly held, the evidence presented established that Bracey and Humphries were not separate spokes on a conspiracy wheel, but central participants with Gray.

Five witnesses testified at trial as to the participation of Humphries and Bracey in the conspiracy. Joyce Chambers, Sean Washington,

8

Troy Davis, Terrance Bailey and Linwood Gray II all stated that Bracey and Humphries were regularly involved in Gray's drug activities. This evidence established that Humphries was a supplier of both drugs and "cutting" agents to Gray, and a key member of the conspiracy. Although it appears that Bracey occupied a lesser role -- he acted primarily as a driver for Gray -- the testimony of the above witnesses provided proof that his involvement with Gray was not limited to his dealings with Chambers. Instead, it appears that at various times during the conspiracy Bracey delivered or picked up both drugs and cutting agents, making him a member of the full conspiracy.

It is true that the indictment, and the evidence at trial, included much more evidence concerning Gray, who was clearly the mastermind of the conspiracy. It is also true that Humphries and Bracey were not involved in all aspects of the conspiracy. But, the members of a single conspiracy need not have participated to the same extent to be convicted:

> one's having come late to or having varied his level of participation in [a conspiracy] from time to time puts him in a position "no different from that of any co-conspirator who claims to be prejudiced by evidence that goes to the activities of co-conspirators." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). The Government may not properly be "deprived . . . of its right to detail the full scope of the conspiracy and to present its case in proper context" simply because particular co-conspirators were not involved in the full scope of its activities. Id.

United States v. Tipton, 90 F.3d 861, 883 (4th Cir. 1996). Thus, appellants have not shown that the evidence at trial established separate conspiracies, and therefore have proven no variance.

B.

We also reject appellants' argument that the district court erred in refusing to grant a multiple conspiracy charge to the jury. As outlined above, the evidence at trial sufficiently proved a single conspiracy. "A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in`separate conspira-

9

cies <u>unrelated</u> to the overall conspiracy charged in the indictment.'" <u>Kennedy</u>, 32 F.3d at 884 (emphasis added in original) (quoting <u>United States v. Castaneda-Cantu</u>, 20 F.3d 1325, 1333 (5th Cir. 1994)).

V.

Appellants next raise a series of sentencing issues.

A.

Bracey argues that the district court erred in finding him a career offender for purposes of Sentencing Guideline § 4B1.1. <u>See</u> U.S. Sentencing Guidelines Manual § 4B1.1 (1995). The only question under § 4B1.1 is whether Bracey's four previous state convictions for armed robbery should have been treated as "related offenses" under sentencing guideline § 4A1.2(a)(2). U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (1995). If these convictions had been found related, Bracey would not have been sentenced as a career offender.

The notes to § 4A1.2 define three circumstances when prior sentences may be considered related: "if [the sentences] resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S. Sentencing Guidelines Manual § 4A1.2 n.3. Bracey claims that the district court erred in not finding his previous armed robberies to be "part of a common scheme or plan."

Bracey committed five armed robberies in Prince Georges County, Maryland, and one in Fairfax County, Virginia from March 27, 1984 until May 8, 1994. Bracey pled guilty to all of these crimes, and in return some of the counts were dropped against him. He was eventually separately sentenced for three of the Maryland armed robberies, and for the Virginia armed robbery.

Bracey testified before the district court that he and Darrell Canard performed these robberies as part of a continuing scheme to raise money for drugs, and for an eventual trip to California. Bracey testified that the robberies were performed over a short period of time, and in the same manner: Bracey and Canard, and on some occasions

10

a Mr. Ham, would rob a fast food restaurant, or a convenience mart, or record store immediately before closing. The district court specifically found that Bracey's crimes were not part of a common scheme or purpose.

Bracey asserts that this ruling was erroneous, and relies primarily on our recent opinion in United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). In Breckenridge we listed a series of indicia that a district court should consider in determining whether offenses are part of a common scheme or plan:

> whether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar modus operandi, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography.

Breckenridge, 93 F.3d at 138. In Breckenridge we remanded the case back to the district court because there had been no consideration of two of these factors. Id. at 139.

In this case Bracey argues that the majority of the Breckenridge factors weigh in favor of finding his armed robberies connected: they were part of a common scheme and plan, they were committed over a short period of time, in close geographic proximity, they involved the same substantive offense, were solved by the same criminal investigation, shared a modus operandi, and were animated by the same motive. Bracey made substantially the same argument before the district court.

The critical difference between this case and Breckenridge is precisely that the district court here considered each of the Breckenridge factors, weighed the evidence, and made several factual determinations. Three of those factual determinations are devastating to Bracey's assertion that the armed robberies were part of a common scheme. First, the district court found no common motivation behind the robberies; the court specifically held Bracey's testimony to the contrary unbelievable. Second, the court found that although all of the

11

armed robberies were, as the government conceded, performed in a similar manner, there was no "signature M.O." Finally, the court found that although the second, third, and fourth robberies were performed in a short period of time, overall there were some large gaps between robberies, and a significant total amount of time at issue.

In this case the district court was correct on the law -- it considered all of the factors listed in Breckenridge , even though that opinion had not yet issued -- and made sufficient factual findings. Therefore we are left to review those factual findings for clear error. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996). Although this is a close case, the district court carefully considered Bracey's arguments and its factual findings were not clearly erroneous.

B.

Bracey also challenges the district court's finding that more than one kilogram of heroin was attributable to him for purposes of sentencing. The district court's attribution was supported by the evidence presented at trial, and was not clearly erroneous.

C.

Humphries challenges the upward adjustment he received under Sentencing Guideline § 2D1.1(b)(1) for firearm possession. See U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1995). The government's search of the Jean Marie Drive residence uncovered the chemicals mannitol and quinine in a hollowed out Physician's Desk Reference in the garage. Humphries' fingerprints were found on the Physician's Desk Reference. Mannitol and quinine are chemicals used as cutting agents in the narcotics trade. The search also uncovered a pistol hidden in a rolled up carpet in the garage near the hollowed out book.

Sentencing Guideline § 2D1.1(b)(1) provides that, "if a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S. Sentencing Guidelines Manual § 2D1.1(b)(1). Note 3 to that guideline states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was con-

12

nected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 n.3. The district court found that the cutting agents were part of the conspiracy, and that the gun's close proximity to these agents made it likely that the gun was involved. This finding was sufficient for § 2D1.1(b)(1) and not clearly erroneous.

D.

Finally, Gray raises two objections to his sentencing. First, he argues that the district court erred in applying a two level increase under Sentencing Guideline § 3C1.1, which applies "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense. . . ." U.S. Sentencing Guidelines Manual § 3C1.1 (1995). Conduct warranting the enhancement includes the commission of perjury. See U.S. Sentencing Guidelines Manual § 3C1.1 n.3.

The court found that Gray "willfully gave false testimony with regard to material facts." The district court based this finding on a comparison of Gray's behavior on a videotape, where he agreed to purchase a kilogram of heroin and took a gram of the heroin as a sample, and Gray's testimony that he was not a drug dealer and that he took the gram of heroin for "therapeutic" uses. The district court also found incredible Gray's testimony that he had sent his underlings to Amsterdam to purchase several kilograms of heroin as a part of a grand scheme to convince his son to quit drug dealing and return to the straight and narrow.

We have recently described the findings necessary to support an enhancement for perjury:

> [an] enhancement for perjury is sufficient if the court's finding of obstruction "encompasses all of the factual predicates for a finding of perjury." [United States v. Dunnigan, 507 U.S. 87, 95 (1993)]. These predicates involve a finding that a defendant "[gave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. [at 94].

13

United States v. Castner, 50 F.3d 1267, 1279 (4th Cir. 1995). In this case the district court found that Gray's testimony was willfully false and involved material matters. These findings were sufficient as a matter of law, and were not clearly erroneous.

Gray also argues that the district court erred by enhancing his sentence under Sentencing Guideline § 3B1.1(a) as "an organizer or leader of a criminal activity that involved five or more participants. . . ." U.S. Sentencing Guidelines Manual § 3B1.1(a) (1995). There was ample evidence presented at trial to support the district court's conclusion that Gray was such an organizer or leader.

AFFIRMED

14