WILKINSON, Circuit Judge,
concurring in part and dissenting in part:
This ruling seeks to reorder the balance between trial and appellate courts. The majority regrettably pulls the trial process away from both the trial court and the jury, substituting its own assessment of the relevance and weight of the defendant’s prior criminal activity. By holding that the defendant’s “expressed willingness to sell crack cocaine bear[s] no discernible relationship to the charge of possession of cocaine with the intent to distribute,” ante at 397, the majority departs from established law in no fewer than five circuits spanning more than thirty years.
Our sister circuits have wisely recognized that assessing whether a defendant’s prior transactions in different narcotics are relevant to the charged offenses is an intensely factual question. They have wisely understood that the courts of appeals owe significant deference first to the district court’s discretion on whether the evidence should be admitted and then to the jury’s determination about how much weight it should receive. But appellant seems to think that circuit courts are better suited to these tasks. I can find no error, and certainly not one that amounts to an abuse of discretion, in the admission of Blanding’s testimony about prior narcotics transactions with the defendant. I therefore respectfully dissent from Parts III and IV of the majority opinion.*
I.
A.
Appellant’s position overlooks simply this: that institutional relationships are to law what personal relationships are to life. And keeping the relationship of trial and appellate courts free of unwarranted encroachments is essential to the harmonious workings of our system. It is thus an article of faith that “[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.” United States v. Abel, 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). The majority pays lip sendee to our deferential review of the district court’s evidentiary rulings, see ante at 394-95, but fails to show any actual regard for the reasoned rulings of the trial judge in this case. This court has been clear that the trial court’s “determination [of admissibility] will not be overturned except under the most extraordinary of circumstances.” United States v. Heyward, 729 F.2d 297, 301 n. 2 (4th Cir.1984). Evidence of a defendant’s prior bad acts is no exception. We must “defer to a trial court’s Rule 404(b) balancing unless it is an arbitrary or irrational exercise of discretion.” United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986).
This standard of review is not some mere trope to be recited in the opening stanza of discussion and then quickly for *402 gotten. It exists to protect the different functions of the trial and appellate courts. “Judgments of evidentiary relevance and prejudice are fundamentally a matter of trial management.” United States v. Benkahla, 530 F.3d 300, 309 (4th Cir.2008). They are made quickly on the spot, by “[t]rial judges ... much closer to the pulse of the trial than [the court of appeals] can ever be.” United States v. Tindle, 808 F.2d 319, 327 n. 6 (4th Cir.1986). The district court was “immersed in these proceedings ... and has far more familiarity with the matter than we do.” United States v. Rosen, 557 F.3d 192, 200 (4th Cir.2009). Thus, even if the court of appeals believes that “[i]t is far from certain that the [evidence] is relevant,” or that it concerns “a matter that could be proven by other means,” we nevertheless “may not substitute our judgment for that of the trial court.” Id. at 199-200; see also United States v. Boros, 668 F.3d 901, 907 (7th Cir.2012) (“We will not substitute our opinion for that of the trial judge merely because we may be inclined to rule differently on the question of relevancy.” (internal quotations omitted)).
The Supreme Court has been clear that even if a rule of evidence provides more limitations on admissibility than the general guidelines present in Rules 401 and 402, it is for the district court to apply those standards. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (discussing admission of scientific evidence). In reviewing the district court’s application of evidentiary standards, the Court has continually admonished the courts of appeals against “applying an overly stringent review to that ruling [that] fail[s] to give the trial court the deference that is the hallmark of abuse-of-discretion review.” Id. at 143, 118 S.Ct. 512 This court has heeded this caution with respect to Rule 404(b), acknowledging that “Notwithstanding the greater care required in admitting evidence of prior acts, we still review a district court’s determinations of the admissibility of evidence under Rule 404(b) for abuse of discretion, as we do generally for evidentiary rulings.” United States v. Queen, 132 F.3d 991, 995 (4th Cir.1997). “Because the rule recognizes the admissibility of prior crimes, wrongs, or acts, with only the one stated exception, it is understood to be a rule of inclusion.” Id. at 994.
B.
Applying the Queen test to the evidence in this case illustrates how small a spot the appellant has on which to stand. As the majority properly acknowledges, there is no question that the evidence here is reliable. In fact, there were video and audio recordings of Blanding’s transaction with the defendant. Nor does the different chemical form of the narcotics—crack versus powder cocaine—make the evidence unfairly prejudicial. “ ‘[B]ad acts’ evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence did not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged.” United States v. Byers, 649 F.3d 197, 210 (4th Cir.2011). The district judge was nonetheless acutely aware that Blanding’s testimony was not to be received as general character evidence. He steered the prosecution’s questioning away from prejudicial subjects and restricted it to the relevant foundation for the evidence. See J.A. 210-13. The judge also gave a careful limiting instruction to the jury. The majority considers this to be of no moment, even though we have been clear that “where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides.” Queen, 132 F.3d at 997.
*403 So my colleagues must perforce focus on the question of the relevance or probative value of the evidence. But this is the least defensible ground for reversing the district court. Embodied in Rule 401, “relevance typically presents a low barrier to admissibility.” United States v. Leftenant, 341 F.3d 338, 346 (4th Cir.2003). Moreover, assessing relevance is at the heart of the district court’s trial management function. It is for this reason that “[t]he rules of evidence give trial judges broad discretion in evaluating whether evidence is probative, requiring only a ‘plus value’ to make it admissible.” Queen, 132 F.3d at 997 (quoting Wigmore on Evidence, § 29, at 976 (Tillers rev.1983)).
Here, the majority questions whether the evidence is relevant to proving McBride’s intent to possess and distribute the narcotics seized. But this is a distinctly factual inquiry especially suited for the discretion of the district court, since “the use for which intent evidence is offered ... should be considered with meticulous regard to the facts of each case.” United States v. Hernandez, 975 F.2d 1035, 1040 (4th Cir.1992). Appellate judges are ill-equipped to make that determination from the cold record, conditioned as we are to focus more on analogies to precedent rather than on the particularities of fact on which such questions turn. Because factual permutations are virtually endless and trial courts by training are especially sensitized to their variation, the Supreme Court has been quick to recognize that “[djistrict courts have an institutional advantage over appellate courts in making these sorts of determinations.” Koon v. United States, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In particular, the district court “has full knowledge of the facts and gains insights not conveyed by the record.” Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).
Indeed, this case presents a perfect illustration of matters to which the trial court was attuned that nonetheless eluded appellate review. In United States v. Hernandez, 975 F.2d 1035 (4th Cir.1992), on which the majority heavily relies and discusses at great length, evidence of the defendant’s prior narcotics activity was less relevant because intent was not an issue in the case. The court noted that “Hernandez offered as her defense the contention that she had not sold the crack in question.... She did not testify that she had in some way sold or handled the crack but without the requisite knowledge or intent; nor did she testify that she had never touched crack or did not know what it was.” Id. at 1039. Here, by contrast, the district court expressly found that the evidence was relevant to proving McBride’s knowledge and intent:
In this case I find that since we’re dealing with a situation in the club, the defendant’s denying knowledge of—or apparently wants to deny or will put up evidence later to or not—knowledge of the drugs in his vehicle, knowledge of the activity going on in the club, all of this. Lack of knowledge, possible mistake, not-being-mine type evidence indicates that the Government should be allowed to put up proof that it was knowingly and intentionally possessed. J.A. 188.
As the district court recognized, the knowledge and intent of McBride was central to the entire defense of his case. Inasmuch as Rule 404(b) explicitly recognizes disputed knowledge and intent as grounds for admissibility, the district court can hardly be faulted for its ruling here. The sort of factual iterations noted by the district court make or break the case for admissibility. They can be difficult for appellate judges to divine, even though *404 they may be second-nature to a seasoned district judge whose familiarity with the case exceeds our own. In this case, the district court proceeded conscientiously through the same “four prong test” as the majority, J.A. 187, and made a reasoned ruling on the record. I do not understand how the majority can regard this painstaking inquiry as “an arbitrary or irrational exercise of discretion.” Greenwood, 796 F.2d at 53.
C.
In overturning the district court’s judgment, the majority concludes that the evidence was irrelevant primarily because the prior acts involved the manufacture and distribution of crack cocaine rather than the possession of powder cocaine with intent to distribute at issue in this case. But it is unclear why this should make a difference. In requiring that prior bad acts bear some resemblance to the crime at issue, we have held that similarity may be demonstrated not only “through physical similarity of the acts,” Queen, 132 F.3d at 996, but also “through the defendant’s indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.” Id. It is irrelevant that the prior transaction involved the manufacture of narcotics for sale whereas the instant offense was possession with intent to distribute. This is not a distinction material to the requisite intent of the defendant, such as when “[o]ne activity involves the personal abuse of narcotics, the other the implementation of a commercial activity for profit.” United States v. Jenkins, 345 F.3d 928, 938 (6th Cir.2003). If anything, evidence of prior drug manufacturing is even more telling as to the defendant’s knowledge and intent. Notwithstanding its disclaimer, see ante at 397-98, the burden of the majority opinion is that the intent to distribute narcotics varies substantially based on the particular preparation of the drug.
Our sister circuits have long expressly rejected this distinction. See United States v. Santiago, 566 F.3d 65, 72 (1st Cir.2009) (“That the conviction was for powder cocaine (as the jury was told) and some years before the present crack sale lessened its weight, but the judge was still free to deem it more probative than prejudicial.”); United States v. Molina, 172 F.3d 1048, 1055 (8th Cir.1999) (“The district court also did not abuse its discretion by admitting evidence of the 1.4 grams of crack cocaine that was found in the bedroom Fraga shared with Molina. Molina and Fraga were charged with distributing a mixture or substance containing powder cocaine. Possession of crack, which is derived from cocaine powder, is relevant to show the defendants’ knowledge of cocaine based substances and further discredits Molina’s unwitting bystander defense.”); United States v. Hernandez, 84 F.3d 931, 935 (7th Cir.1996) (“Similarity is tougher, but given our deferential standard of review, we concur in the district court’s conclusion that the prior conviction was similar enough for 404(b) purposes. Different drugs were involved, but both incidents concerned distribution amounts of drugs.”); United States v. Hernandez, 896 F.2d 513, 522 (11th Cir.1990) (The defendant’s prior narcotics activity was “distinguishable only in that the drug in the earlier conviction was marijuana whereas this case involved cocaine. We do not view this as a material distinction; the element of intent in the extrinsic and charged offenses was the same.”); United States v. Batts, 573 F.2d 599, 603 (9th Cir.1978) (“In this case the [404(b) ] evidence consisted of prior activity in drugs, albeit a different drug. The connecting factor between the crime charged here and the rebuttal evidence is the fact that the crime here charges an intent to distribute (hashish) and the rebuttal evidence discloses acts of *405 negotiation leading up to an act of distribution. Merely because the drugs involved are different does not strip this conduct of its evidentiary value.”). The majority inexplicably departs from this weight of caselaw locating the admission of this evidence well within the discretion of the district court. I see no reason for us to diverge from the sound approach of our fellow circuits, especially in this case in which the district court’s exercise of its discretion was so plainly reasonable.
II.
To the extent that the distinctions on which the majority relies have any relevance, their “value or weight is [to be] determined by the jury.” Queen, 132 F.3d at 998. “Assessing the probative value of [evidence] ... is a matter ... ultimately, if the evidence is admitted, for the trier of fact.” Abel, 469 U.S. at 54, 105 S.Ct. 465. It may be that the jury agreed with the majority’s view—we cannot know what, if any, weight it afforded Blanding’s testimony—but the jury is to be the arbiter of such questions, not the court of appeals. Indeed, even though the jurors here both heard arguments from opposing counsel and observed Blanding’s cross-examination on these issues, the majority nevertheless supplants their judgment with its own. This simply “betray[s] too much distrust of the ability of the adversary process to reach just results when the evidence on both sides is in.” Benkahla, 530 F.3d at 310-11.
Sending this case back to the district court for a second round diminishes the trial process. Retrials are like yesterday’s breakfast—always stale and seldom satisfying. Witnesses often try to remember what they said at the first trial rather than their actual recollections of the events in question. Everyone is farther removed from the events the trial process is designed to reconstruct. “The very act of trying stale facts may well, ironically, produce a second trial no more reliable as a matter of getting at the truth than the first.” Mackey v. United States, 401 U.S. 667, 691, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part).
It does more than merely inconvenience participants to put them through the process twice. Retrials can be traumatic, and criminal trials especially so, as witnesses are brought back for a second time to relive troubling events. As for the jurors here, it reduces to insignificance the time they spent in civic duty listening to evidence and argument and weighing facts whose accuracy is in no way questioned. The majority treads no ground here that was not covered at trial, reviewed by the district judge, and assessed by the jury in rendering a fair verdict. I would let the verdict stand in full. The district court applied proper legal standards, followed case law from ours and other circuits, made a sound and considered evidentiary inquiry, and admirably discharged its obligations throughout. With all respect to my fine colleagues in the majority, the trial court should be commended, not reversed.

 I am pleased to concur in Parts I and II of the opinion.